# CASES IN CHANCERY

## DELAWARE

WALTER L. VIRDEN,

*vs.*

THE BOARD OF PILOT COMMISSIONERS, A CORPORATION OF
THE STATE OF DELAWARE.

*New Castle, Sept. T.,* 1895.

An injunction will be granted to restrain the Board of Pilot Com-
missioners created under the Pilotage Act of 1881, from the en-
forcement of its rules, against a duly licensed pilot:

1.  By the penalties of suspension and forfeiture of pilotage fees or
either of them.

2.  By suspension or forfeiture or deprivation of license.
3.  By any penalty whatsoever, except such as shall have been pre-
scribed before the commission of the offense.

The rules adopted in September, 1895, by the Board of Pilot Commis-
sioners, regulating the boarding at other ports, of vessels bound
for Delaware Bay and River, and forbidding licensed pilots from
doing so, otherwise than in accordance with such rules, are rea-
sonable and within the powers conferred by the Pilotage Act of
April 5, 1881.

The penalty of forfeiture of pilotage fees for breach of the rules pre-
scribed by the Board of Pilot Commissioners cannot be enforced
for an offense committed after the rules were prescribed. As to
such offense the rule and penalty are alike *ex post facto.*

Syllabus.

The fact that the Board of Pilot Commissioners has legislative power to establish rules for the government of pilots, and prescribe proper penalties for the violation of the same, and has also judicial power to try and determine charges of violations thereof, does not dispense with the necessity for the existence of the rule and the penalty, before the commission of the offence. These are distinct functions, and cannot be so blended as to make valid an *ex post facto* rule or an *ex post facto* penalty.

When the Legislature has defined an offense and prescribed a penalty for the same, it is not competent for an inferior body, such as the Board of Pilot Commissioners, to add additional penalties, or substitute others for the commission of such statutory offense.

The imposition by the Legislature of a specific penalty for certain offenses does not operate to preclude the Board of Pilot Commissioners from imposing a similar penalty for the breach of its rules. In such case the maxim *expressio unius exclusio est alterius* has no application.

The right conferred by the Legislature upon a corporation, such as the Board of Pilot Commissioners, to make rules, necessarily implies, without any express grant, the right to prescribe and enforce penalties for their violation. But punishment for violation of such rules cannot be by forfeiture of property, if such forfeiture has not been in express terms authorized by the Legislature.

A pilot's license, duly granted under the Pilotage Act, is property which cannot be forfeited except by direct legislative authority, and therefore the Board of Pilot Commissioners has no power to revoke, annul, forfeit or suspend such license as a penalty for the breach of its rules.

It is well settled that in the absence of any express statutory limitation, a court of equity has no jurisdiction where there is an appropriate and adequate remedy in the courts of law, or by some other special mode provided by statute.

Though the provisions of the Pilotage Act, giving an appeal from the decisions of the Board to the Superior Court, may furnish a sufficient and adequate remedy in case of a fine, it is not so in case of forfeiture of license or suspension, whether for a fixed period or indefinitely.

It is a familiar rule of equity that where the Court has jurisdiction of one branch of a case, it will, for the purpose of avoiding multiplicity of actions, assume jurisdiction of the whole subject, including such matters as would not, if standing alone, have been within the jurisdiction of the Court.

BILL FOR INJUNCTION TO RESTRAIN THE PILOT COMMISSIONERS FROM ENFORCING A PENALTY.—The complainant was a pilot duly licensed by the defendant, a corporation created under an Act entitled "An Act regulating Pilots and Pilotage of and in the bay and river Delaware," passed April 5, 1881. The injunction was sought to restrain the defendant from suspension of his complainant's license and forfeiture of his pilotage fees received for piloting a vessel which, it was alleged, had been boarded by him in violation of rules of the Board, adopted in September 1895, the text of which is set forth in the opinion.

The violation of the rules charged, and which was admitted, was that the complainant had boarded a vessel in a foreign port and assumed control as pilot thereof on arrival at or near the mouth of Delaware Bay. Soon after the adoption of the new rules the complainant was cited to appear before the defendant Board to answer the charge, and a motion was made and seconded that he should be suspended, and forfeit and pay to the. defendant the pilotage earned by him. Before the motion was put to a vote, however, at the request of complainant's counsel action was postponed until the next regular meeting on Monday, November 4th, in order to give complainant time to decide upon his course of action. Accordingly the bill was filed, November 7, 1895, and on the twenty-second of the same month an agreement of counsel was filed to the effect that the "case shall be treated, argued and decided as if the bill filed therein had been filed before November 4th, 1895, and a preliminary injunction had then been granted according to the prayer of said bill." It was also provided in the agreement that a preliminary injunction should be issued and the case proceeded with speedily to a hearing on the merits.

The material facts as to what was done by the parties were admitted, but there was testimony taken on both sides presenting conflicting views of the effect of the action complained of by the defendant, upon the pilotage service, and the necessity and propriety of the rules adopted by the Board and violated by the complainant.

The facts of the case together with material provisions of the Acts of Assembly and of the rules, and the testimony so far as it is necessary, are set forth in detail in the opinion.

The Chancellor, having been of counsel in this cause, certified that fact to the Governor, who thereupon appointed as Chancellor *ad litem*, the Honorable William C. Spruance, by whom the case was heard and determined.

*L. C. Vandegrift*, for the Complainant.

It may be admitted that the Board of Pilot Commissioners is authorized to make rules for the government of pilots, but we contend that the penalty of suspension cannot be lawfully enforced. *Kirk vs. Nowill*, 1 *Term* 118; *Cooley, Const. Lim.* 205 ; *Beach, Pub. Corp. sec.* 527 ; *Dill. Mun. Corp. sec.* 336 ; *Cotter vs. Doty*, 5 *Ohio* 394 ; *Henke vs. McCord, et al.*, 55 *Ia.* 378.

The license granted to a pilot by the Board of Pilot Commissioners is a vested property right which cannot be taken away, except under due process of law. *State, ex rel. Heise vs. Town Council of Columbia*, 6 *Rich. L.* 404; *Dill. Mun. Corp. sec.* 346; *Morris vs. Pilot Commissoners*, 7 *Del. Ch.* 136.

The statute gives no authority to revoke or suspend a pilot's license, and, inasmuch as the power of the Board of Pilot Commissioners is derived entirely from the statute, it cannot impose any penalty which is not authorized, either expressly or by necessary implication.

In the present case the penalty was not prescribed before the commission of the offense, and, therefore, its imposition is *ex post facto*. *Dill. Mun. Corp, sec.* 341: *Beach, Pub. Corp.* 522.

That the penalty of forfeiture of pilot's fees cannot be enforced against the complainant would seem to be a conclusion justified by the decision in *Morris vs. Board of Pilot Commissioners*, 7 *Del. Ch.* 136.

The South Carolina case cited for the respondents is entirely different from the present one. In that case the statutory power was more comprehensive than in the present one, and it was considered by the Court to have been intended to provide for a larger authority in the commissioners than is

contemplated by our statute.    *State vs. Commissioners of Pilotage*, 23 *S. C.* 175.

*Levi C. Bird*, for Respondents.

First: The question of jurisdiction.

It is submitted that the Court of Chancery has no jurisdiction because an adequate remedy at law has been provided by the statute creating the Board of Pilot Commissioners. It must be conceded that the Court of Chancery in this State has no jurisdiction in cases where there is an adequate remedy at law provided by the statute. *Rev. Code* (1893) 704, *Ch.* 95, *sec.* 1; *Carlisle vs. Fleming*, 1 *Harring.* 432; *Beeson's Admr. vs. Elliot Exr.*, 1 *Del. Ch.* 368; *Endlich, Interp. Stat. secs.* 465- 6; *A. & E. Enc. L.* 692.

The remedy provided by statute is adequate and complete. If the pilot is aggrieved by a decision made or penalty imposed, he has a right of appeal to the Superior Court, and this is the only remedy provided by the statute.

It is well settled that when a statute creates a right or confers a power and provides a specific mode for redress of injuries caused by its exercise, the statutory remedy and no other must be strictly pursued. *Endlich, Interp. Stat. sec.* 154; *Suth. Stat. Const. sec.* 396; *Sudbury Meadows vs. Middlesex Canal*, 23 *Pick.* 36–47; *Henniker vs. R. R.* 29 *N. H.* 14; *Spangler vs. Canal Co.* 64 *Pa. St.* 387; *Spring vs. Russell*, 7 *Me.* 273.

When a new offense is created and a penalty is given for it, or a new right is given and specific relief given for the violation of such right, the punishment or remedy is confined to that given by the statute. *Renwick vs. Morris*, 7 *Hill* 575; *McKenney vs. Navigation Co.*, 14 *Pa. St.* 65; *State vs. Craycroft* 2 *Cal.* 243; *McCormack vs. R. R.*, 9 *Ind.* 283.

Consent will not give jurisdiction. *Beeson's Admr vs. Elliott, Ex'r.* 1 *Del. Ch.* 368, 383.

Second: The power of the Board of Pilot Commissioners,

I. The power vested in the Board of Pilot Commissioners. as a body created by the Act of April 5, 1881, 16 *Del. Laws* 494, was intended to create and foster a wise and efficient pilotage service.

It provides for a board of five persons. three of whom are a quorum, and they are vested with authority to grant licenses to pilots and make rules for their government. The power to make these rules is absolute.

II. The resolutions passed by the Board, after reciting that itw as necessary for the good of the service, to prohibit pilots from boarding vessels otherwise than from a regularly licensed pilot boat and from going to any other port to board or pilot any vessel bound for the Delaware Breakwater, the port of Philadelphia, or any other port on the Delaware River or Bay. The penalty for violation of this rule is suspension. The regulation also provided a system of rotation by which a pilot should be taken alternately from Pennsylvania Boats and Delaware Boats whenever a pilot was required to board a vessel bound for the Delaware Bay, but at no other port.

The regulations also forbade the boardingof vessels by a pilot from a steamboat or any other vessel other than a pilot boat when there is one in sight. If a vessel should be boarded when no pilot boat was in sight, the pilot signal should be kept set until Cape Henlopen was passed and the vessel should be surrendered to the first pilot boat speaking her outside that range.

These regulations were intended to create and foster a wise and efficient pilotage service. They were intended to abolish a vicious system adopted by the complainant to increase his business, and which has been abolished in every other Atlantic seaport.

The action of the complainant, for which he was disciplined by the Board, was that having headquarters in the city of Philadelphia, he became advised of the names of vessels sailing from Halifax, Boston, New York, Baltimore, or other nearby ports, and then proceeded by railroad to its sailing port.

As a result the complainant was constantly absent from the Delaware Bay, and seldom, if ever, cruised off the capes, while other pilots were enduring the hardships of cruising, keeping up the practical knowledge of navigation and remaining on watch for incoming vessels.

During the pilot's absence from the Bay changes might be made in the position of lights, buoys, or the depth of water over shoals, with which he would be unacquainted, and, consequently, would endanger the lives and property committed to his care.

III. Upon the true construction of the statute creating the Board of Pilot Commissioners, it has absolute control of pilots of and in the Bay and River while engaged in the service, and it has the right to make such rules as it deems wise for the government of pilots.

The language of the statute is positive and unequivocal.

The power to make rules necessarily carries with it the right to enforce them. 1 *Kent Com.* 165; *Suth., Stat. Const.* 341; *Endlich, Interp. Stat, sec.* 418; *Steef vs. Hart,* 1 *N. Y.* 20; *Dwarris on Statutes,* 514-517; *In re Neale,* 39 *Fed. Rep.* 833; s. c. 135 *U. S.* 1; *Commonwealth vs. Conyngham,* 66 *Pa. St.* 99; *Witherspoon vs. Dunlap,* 1 *McCord* 546; *People vs. Eddy,* 57 *Barb* 593; *Mayor vs. Sands,* 105 *N. Y.* 210; *Wieman vs. Anderson,* 42 *Pa. St.* 318.

Reasonable penalties, such as fine or suspension may, under the statute, be imposed for violation of the rules. *Stephens vs. Com'rs. of Pilotage of Beaufort,* 23 *S. C.* 175.

SPRUANCE, CHANCELLOR *ad litem:*—

This is an Injunction Bill brought by the complainant, Walter L. Virden, to restrain the defendants, The Board of Pilot Commissioners, from enforcing certain rules adopted by the said Board, prohibiting pilots, holding licenses from this State, from boarding vessels otherwise than from licensed pilot boats, except as provided by said rules.

The Act entitled "An Act Regulating Pilots and Pilotage of and in the Bay and River Delaware," passed by the Legislature of this State, April 5, 1881, established and incorporated a Board of Pilot Commissioners consisting of five persons, and among other things, authorized said Board, under the limitations prescribed by said Act, "to grant license to persons to act as Pilots in the Bay and River Delaware, and to make rules for their government while employed in that service, to decide all differences which may arise between mas-

ters, owners and consignees of ships or vessels and pilots, except in cases hereinafter excepted; provided that if any person whomsoever shall conceive himself aggrieved by any decision or penalty made, given and imposed by the said Board, such persons may, except in cases hereinafter excepted, within six days appeal therefrom to the Superior Court of either of the Counties of this State, and on such appeal the like security shall be entered and the like proceedings had as in the case of an appeal from the judgment of a Justice of the Peace for a debt or demand not exceeding one hundred dollars."

Said Act provided that the licenses granted by the Board "shall be in force for one year from the date thereof and until pilots respectively shall next after the expiration of the year, arrive with any ship or vessel at any port on the Bay or River Delaware, and no longer;" it fixed the amount of the license fees and required the licensee to give bond with surety to the Governor of the State, "conditioned for the true and faithful performance of the duties and services required by this act, and that he will not aid or assist in defrauding the revenue of the United States, and that he will deliver up the license to him granted, when required by the Board, in pursuance of the provisions of this Act."

The said Act, and subsequent amendments thereof, defined certain offenses by pilots, and prescribed penalties for the punishment of the same; such penalties being pecuniary fines, forfeitures of pilotage fees, forfeiture of license absolutely, or for a specified time, suspension for any time the Board may think proper, and deprivation of license for one year.

The Act also provided that "in every case of suspension the pilot shall deliver up his license to the Board, to be by them kept until the time for which he may have been suspended shall have expired."

Said Act further declared, "That the pilot who shall first offer himself to any inward bound ships or vessels shall be entitled to take charge thereof," and that "Any pilot bringing in any inward bound ship or vessel shall, by himself, or

one of his boat's company, be entitled to pilot said ship or vessel to sea when she next leaves the port."

The Complainant is a pilot of and in the Bay and River Delaware, duly licensed by the said Board, pursuant to the provisions of the said Act and the amendments thereof.

In the month of September, 1895, the said Board adopted the following rules or regulations:

"Whereas, it has become necessary for the good of the pilot service to prohibit pilots holding license from the State of Delaware from boarding vessels by any means other than a regularly licensed pilot boat, therefore be it

Resolved, 1st, That no pilot, excepting as hereinafter provided, shall go to any United States or foreign port to board or pilot any vessel bound for the Delaware Breakwater, Port of Philadelphia, or any port on the Delaware River or Bay; nor shall any pilot offer in any United States or foreign port or waters adjacent thereto to pilot any vessel to the Delaware Breakwater or the above mentioned ports, under penalty of suspension.

2nd, Whenever a pilot shall be required to go to any United States or foreign port to pilot any vessel to the Delaware Breakwater, the Port of Philadelphia, or any port in the Delaware River or Bay, the captain, owner, agent or consignee of said vessel shall apply to the pilot's office and a pilot shall be furnished, to be taken in rotation from the various pilot boats; first, from Pennsylvania boat No. 1; second, from Delaware boat, No. 1; third, from Pennsylvania boat No. 2; fourth, from Delaware boat No. 2, and thus continuing until every boat has had her turn in furnishing a pilot for this service. Should any boat's company be unavailable, the pilot shall be taken from the next boat in rotation. The travelling expenses of the pilot shall be paid by the vessel; Provided, that if the pilot having the turn to go should be objected to for a good cause by the captain, owner agent or consignee, another of his boat's company may be taken, and if the whole boat's company is objectionable, application can be made to the next boat in rotation, but no further.

3rd, No pilot shall board a vessel from a steamboat or any vessel other than a pilot boat, when there is a pilot boat in sight. If there is no pilot boat in sight, the pilot may board the vessel but shall set a pilot signal immediately and keep it set until Cape Henlopen bears south west (S. W.), and shall surrender the vessel to the first pilot boat speaking the vessel outside that range. A flag by day or a torch by night shall be considered a pilot boat's signal for speaking a vessel. In case a vessel comes to the Breakwater for orders, and discharges her pilot, subsequently receiving her orders to Philadelphia, and then

takes another pilot, he shall be permitted if necessary to take charge of the vessel from the Breakwater.

4th, That these resolutions shall go into effect the first day of October, 1895."

After the first day of October. 1895, the complainant went to a foreign port, to wit, Halifax, Nova Scotia, and there boarded a vessel belonging to the Allan Line of steamers from Glasgow and Liverpool, calling at Halifax, and bound for Philadelphia.

After said vessel reached pilotage ground, at or near the mouth of the Delaware Bay, the complainant became the pilot of said vessel and brought her to the port of Philadelphia, he being the first pilot to offer his services to said vessel.

Afterwards, the complainant was cited by said Board to appear before it to answer a charge of having violated said rules or regulations, and having admitted the facts above stated. a motion was made and seconded that the complainant "be suspended as a pilot in the Bay and River Delaware, and that he forfeit and pay to the Board of Pilot Commissioners, aforesaid, the pilotage earned by him for piloting the vessel as aforesaid."

Before said motion was put to a vote, the Board, at the request of the complainant's solicitor, postponed further consideration thereof until November 4, 1895, in order that the complainant might have an opportunity to decide what course he would pursue with respect to the proposed action of the Board.

The bill alleges that thereupon the complainant filed this bill, but for the filing of which he would have been suspended and fined as aforesaid, and the answer of the defendant admits this allegation to be true.

The complainant has a verbal contract with the said Allan Line to pilot the ships of the said line in and out of the Delaware Bay and River, pursuant to which for some years past, he has been in the habit of boarding the ships of said line, as they touch at Halifax, and proceeding with them until their arrival off the mouth of the Delaware Bay, and

thereupon assuming the duties of pilot and bringing the ship to the port of Philadelphia.

About the time of the adoption of the said rules or regulations by the said board, similar rules or regulations were adopted by the Wardens of the Port of Philadelphia.

It appears by the testimony, that for some years prior to the adoption of these rules or regulations, it had been the practice of some of the pilots of the Delaware Bay and River to go to ports of the United States, or foreign ports, to board and pilot vessels bound for ports on the Delaware River or Bay, but that since the adoption of said rules the practice had been abandoned by all of the Delaware pilots, except the complainant, and by all of the Pennsylvania pilots except one or two.

The complainant denies the legal validity of the said rules or regulations, and the right of the said Board to enforce the same in the mode proposed, or otherwise.

The bill prays that the said rules or regulations may be declared null and void, and that the said Board may be perpetually restrained by the injunction of this Court from suspending the complainant as a pilot as aforesaid, on account of the facts above stated, or for the reasons set forth in said resolutions, and that it be perpetually restrained as aforesaid, from imposing upon the complainant any fines, penalties or forfeitures, or anything in the nature thereof, on account of the acts done by him as hereinbefore stated, or for the reasons set forth in said resolution, and that a preliminary injunction may issue to restrain the said Board in like manner until the further order of the Court, and that the complainant may have such other and further relief as the nature of the case may require.

The answer of the said Board denies the right of the complainant to the relief sought; insists that said Board was fully empowered by the said Act of April 5, 1881, and the amendments thereof, to make and enforce the said rules or regulations in the mode prescribed therein, and in the manner proposed by the resolution pending before said Board; claims that said rules are reasonable and necessary for the main-

tenance of an efficient pilotage service; avers that the complainant has an adequate remedy at law by appeal to the Superior Court and denies the jurisdiction of this Court.

It would be difficult to exaggerate the importance of a well regulated and efficient pilotage service, and such a service is especially important to the commerce of the Delaware, in view of the dangerous approach to the capes and the long and dangerous bay and river to be traversed before reaching the port of Philadelphia.

To regulate this most useful service, and to promote its efficiency, the Pilotage Act was passed, and every aid within the limits of the law should be afforded to the Board of Pilot Commissioners in the discharge of their responsible duties. The Board should not only enforce the provisions of the Act in reference to the duties of pilots, but should make and enforce, by proper penalties, such reasonable rules and regulations as may, from time to time, be found necessary for the government of pilots while employed in said service.

No suitable system of pilotage can be maintained without a sufficient number of pilot boats, the chief use of which is to cruise at sea in search of vessels needing pilots.

Any practice which tends to discourage the maintenance of a sufficient fleet of pilot boats, must be detrimental to the service.

Without the aid of any direct testimony upon the subject, it is easy to reach the conclusion that the practice complained of tends to injure the service.

It is more profitable, is attended with less risk and expense, and furnishes more steady and certain employment, and has a tendency to draw from the ordinary cruising service a large number of capable pilots, and breed jealousy and dissatisfaction among those who, unable to obtain the more desirable employment, should be obliged to continue in the more perilous and less profitable branch of the service; and would tend to discourage the maintenance of a sufficient cruising fleet so essential to the safety of a large number of vessels requiring pilots.

The overwhelming weight of the testimony in this case is that this practice is injurious to the service.

The only witnesses who testified to the contrary, are the complainant, a Pennsylvania pilot, who appears to have been at the time he testified under discipline for the violation of a similar rule adopted by the Port Wardens of Philadelphia, and an agent of the Allan Line, in whose service the complainant was at the time of the commission of the offence charged.

On the other hand, the President of the Board of Pilot Commissioners, and six other experienced pilots, bear testimony to the injurious tendency of the practice.

In reply to the question, how the refusal of pilots to obey said rules would affect the service, the President of the Board says,—"It would have a tendency for the best of the pilots to go out of the regular service, and go into what they call 'the Pullman Palace Car Service.' In other words, instead of cruising on boats, they would go to other ports to seek business, to bring inward bound ships in. Of course, the man that brings an inward bound ship in, is entitled to take her out again. It would certainly discourage the pilots that have to cruise, whilst they are cruising to speak the vessel inward bound and find a pilot already on board. If the resolutions are not sustained, in my opinion, it would not be but a very few years until the pilot service of the Delaware would be broken up nearly altogether."

In reference to the injurious effect of the practice complained of, George W. Poynter testifies,—"It is creating a great deal of dissatisfaction at the present time. We men who go to sea in our boats, cruise around and take what ever comes along, and ships will come along from Boston, Halifax or New York, with a pilot on board, and it is very discouraging to a man cruising."

Arthur W. Marshall testifies,—"I think if these resolutions are ignored by the pilots, and this thing is continued,— not only by Mr. Virden, there will be several others that will do it if he is allowed to do it,—that the boats will be entirely crippled, because there will not be sufficient pilots to support the boats; and even if there were, they would not get suffi-

cient vessels, if every man was allowed to go around to the different ports and get the boats. For the vessels not stopping at the ports, coming from the other side, would be entirely deprived of pilots."

Harry V. Lyons says,—"Under the present system as we are working now, we have several pilot boats and we have very good cruises and are always there ready to speak a ship coming in; but if this 'parlor car' business is allowed, this going to other ports, etc., eventually the pilot boats will have to lay up and that part of the service will be done away with."

It is one of the objects of the pilotage act to encourage the maintenance of a suitable number of pilot boats, and also to encourage them to cruise for vessels, and this is especially manifest from the provisions of Section 18 of said Act as amended prescribing pilotage fees for inward-bound vessels, the amounts of which were made to depend not only upon the draft of the vessel, but also upon where she is spoken; the larger rates being allowed when spoken outside of certain defined lines.

There may be, and probably will be cases where it is desirable that inward-bound vessels shall take pilots at sailing ports or ports of call, and the second of said rules makes suitable provision for such cases by a system of rotation, which appears to be just to the pilots and adequate to the needs of commerce.

In view of these considerations the Court has no doubt that the said rules adopted by the Board are reasonable, and within the powers conferred upon the Board by the Pilotage Act, so far as said rules relate to the object sought to be attained.

An important question remaining for consideration is whether the penalty prescribed by said rules, and the penalties proposed to be imposed upon the complainant for his violation of the same, can be lawfully enforced

It is contended on behalf of the complainant, that because the Pilotage Act prescribed suspension or forfeiture of license for certain offenses therein specified, it was not com-

petent for the Board to inflict similar penalties for the violation of its rules.

It is undoubtedly true, that where the Legislature has defined an offense and prescribed a penalty for the same, it is not competent for the inferior body, such as this Board, to add additional penalties; or substitute others for the commission of such statutory offense; but it will be observed that no such question can arise here, as the offense complained of is not created by statute, but by a rule or regulation of the Board adopted, as is claimed, under the general powers conferred by the statute upon the Board to make rules of this character.

Nor does it appear that there is here any reason for the application of the maxim *expressio unius exclusio est alterius*, as the Legislature in imposing suspension or forfeiture of license, was dealing with statutory offenses, while we are considering an offense of a wholly different character.

It could, with equal propriety, be claimed, as the act prescribed pecuniary fines for certain offenses therein named, the Board could not prescribe similar penalties for the breach of its rules.

The right conferred by the Legislature upon a corporation, such as this Board, to make rules, necessarily implies, without any express grant, the right to prescribe and enforce penalties for their violation; but the character of the penalties which, without the express authority of the Legislature, may or may not be so prescribed and enforced, is well defined in numerous cases and text-books.

Punishment for violation of rules such as those under consideration, cannot be by forfeiture of property, if such forfeiture has not been in express terms authorized by the Legislature.

The leading case upon the subject is *Kirk vs. Nowill* 1 *Term Reps.* 118. in which Lord Mansfield says, "A corporation in the definition of it, is a creature of the Crown created by letters patent; and such a corporation with a power of making by-laws, can not make any such law to incur a forfeiture. Those corporations which are created by act of

Parliament, have no other additional powers incident to them than those have which are created by charter, unless they be expressly given.   No such extraordinary power of making by-laws to incur a forfeiture appearing upon this plea to have been conferred, it is impossible for the court to say, that this by-law can be supported by the Act."

The following citations from text books of recognized authority are to the same effect:

*Cooley on Constitutional Limitations, page* 205, note, "Municipal by-laws may impose penalties on parties guilty of a violation thereof, but they cannot impose forfeitures of property or rights, without express legislative authority."

*Beach on Public Corporations, Sec.* 527, "A municipal corporation cannot impose a forfeiture of property without express authority.   Such an extraordinary power cannot be exercised under the general power to make by-laws."

*Dillon on Municipal Corporations, Sec.* 336, "That by-laws or ordinances may not be inoperative or useless, it is necessary that some penalty should be annexed to the breach of them; and it is settled in England, in accordance with the principles of Magna Charta, that without the express sanction of Parliament no by-law can be enforced by disfranchisement of the offender, or by his imprisonment, or by forfeiture of his goods or property.   Under incidental power to pass by-laws, a corporation may, in England, annex pecuniary penalties of a certain fixed and reasonable character, *but without express authority given by a statute, the only penalty it can prescribe is a pecuniary one usually called a fine.*"

Sec. 338, "Since an ordinance or by-law without a penalty would be nugatory, municipal corporations have an implied power to provide for their enforcement by reasonable and proper fines against those who break them.   So the right to make by-laws gives to the corporation, without any express grant of power, the incidental right to enforce them by reasonable pecuniary penalties."

Sec. 345.   "Power of forfeiture must be expressly conferred.   A corporation, under a general power to make by-

laws, cannot make a by-law ordaining a forfeiture of property. To warrant the exercise of such an extraordinary authority by a local and limited jurisdiction, the rule is reasonably adopted that such authority must be expressly conferred by the Legislature. * * * In England the power of municipal corporations to impose a forfeiture for offenses created by ordinance or by-laws, has been in many cases sanctioned by usage without any express power in the charter to impose the forfeiture. But in this country, inasmuch as corporations derive all their power from charter or act of the Legislature, the right to inflict a forfeiture must be plainly given and cannot be derived from usage."

In *Cotter v. Doty*, 5 *Ohio*, 394, it was held that in the absence of express statutory authority the City of Cincinnati could not declare and enforce a forfeiture of gun-powder. The Court says:

"The first important question is, did the corporation, under their charter, possess power to create this forfeiture? For no matter how expedient it may be, it cannot be sustained unless the power is granted in the act creating the corporation. Corporations may, nay, they must, from the necessity of the case have power to regulate their own internal concerns, and this although the power is not specifically granted. But the power to create forfeitures is a high power; one which will not be exercised by the legislature of the State except in extreme cases. Certainly, then, no corporation shall be permitted to exercise this power unless under *an express and explicit grant of the right*. But about this there is no dispute. The principle is not controverted."

In *Henke v. McCord, et al.*, 55 *Iowa*, 378, it was held that a municipal corporation has no power to pass an ordinance authorizing the forfeiture or destruction of liquors kept for sale in violation of an ordinance of the City. The Court says:

" Section 463 of the Code confers upon a municipal corporation power 'to regulate or prohibit the sale of intoxicating liquors not prohibited by the laws of this State.' It cannot be claimed that this section in express words confers

upon a municipal corporation authority to search for and destroy liquors kept for sale in violation of an ordinance prohibiting their sale. It must be admitted also, we think, that this power is not essential, that is indispensable to the declared objects and purposes of a municipal corporation. It remains to be seen whether it is necessarily or fairly implied in or incident to the power conferred of prohibiting the sale of intoxicating liquors not prohibited by the laws of the State. It has been quite uniformly held that a municipal corporation has no authority to pass an ordinance creating a forfeiture of goods and chattels as a penalty for violating its by-laws or ordinances, *unless such powers are expressly granted by its charter.*"

Numerous other decisions to the same effect might be cited, but these are sufficient.

Is a pilot's license, duly granted under the said Pilotage Act, property which the Board has no power to forfeit for breach of its rules or orders?

In *Heise vs. Town Council*, 6 *Rich.* (*S. C.*) *Law*, 404, it was held that a license to retail liquor, which was granted and paid for, was essentially property, and that a town council which could only impose fines, had no power to impose forfeiture of such license, there being in the opinion of the court no difference between the forfeiture of a license and of goods and chattels.

The case is cited with approval in *Dillon on Municipal Corporations, Sec.* 346.

This question was settled by the case of *Morris vs. The Board of Pilot Commissioners*, 7 *Del. Ch.* 136, 30 *Atl. Rep.* 667. In that case the Board threatened to revoke the licenses of certain pilots, by reason of their refusal to obey certain orders of the Board.

The circumstances of that case were in many particulars different from those in this case, but the point now in question was material in that case, and was so considered by the Court.

Chancellor Wolcott says: "Granting now that the refusal of the complainants to allow John B. Merritt to cruise on

board the Thomas Howard was a difference between them of which the Board could take cognizance, it had no right to proceed in the way it did. The method which the Board adopted of coercing submission to its decision of these alleged differences, was by declaring a revocation or forfeiture of complainants' licenses. This, however, the Board had no authority to do, inasmuch as this power was not expressly given to it by the act, or any of its supplements. The power vested in the Board to make rules for the government of pilots and to decide differences, carries with it the incidental power to enforce the same by the imposition of reasonable pecuniary penalties without any express grant of power to that effect. But the right to inflict a forfeiture as a penalty must be plainly given, and cannot be derived from usage or raised by implication."

The penalty prescribed by rule one, and now proposed to be imposed upon the complainant, is suspension without limit as to time; but whether such suspension be for the whole or only a portion of the period of the license is not material. In either case it would operate as a forfeiture. Forfeitures are not always absolute and entire. Forfeiture for treason against the United States is limited by the Constitution to "the life of the person attained."

As no express authority to revoke, annul, forfeit or suspend a pilot's license as a penalty for the breach of any rule made by the Board is to be found in the said pilotage act, or any amendment thereof, or any other statute of this State, it is beyond the power of the Board to impose such a penalty for the breach of its rules.

The penalty prescribed for the violation of rule one is suspension only. If this can not be enforced against the complainant for the reasons above stated, can the other penalty now proposed to be imposed, viz.: forfeiture of pilotage fees, be enforced?

No such penalty for the violation of said rules was prescribed before the commission of the offense.

There has been some conflict of opinion as to whether corporations, having power to pass by-laws and affix penal-

ties, may make such penalties discretionary within fixed limits, e. g., not exceeding fifty dollars.

*Dillon on Municipal Corporations*, Sec. 341, holds that they may, but no authority has been found for the imposition of a penalty for the violation of a by-law or rule of a corporation where none was prescribed before the commission of the offence.

*Beach on Public Corporations*, Sec. 522, says:

"Since an ordinance *without a penalty would be nugatory*, a corporation that has the power to pass the ordinance has an implied power *to provide* for its enforcement by proper and reasonable fines against those who break it."

Sects. 336 and 338 of *Dillon on Municipal Corporations* are to the same effect.

The fact that the Board has legislative power to establish rules for the government of pilots, and prescribe proper penalties for the violation of the same, and has also judicial power to try and determine charges of violations thereof, does not dispense with the necessity for the existence of the rule and the penalty before the commission of the offence.

These are distinct functions, and can not be so blended in their exercise as to make valid an *ex post facto* rule or an *ex post facto* penalty.

It would be manifestly unjust to punish the violation of such a rule by the infliction of a penalty, the nature or extent of which the accused could have no knowledge until after the commission of the offense.

For these reasons, the penalty of forfeiture of pilotage fees can not be enforced against the complainant.

This conclusion is within the spirit if not the letter of *Morris vs. The Board of Pilot Commissioners*, above cited.

*State vs. Commissioners of Pilotage*, 23 S. C. 175, differs essentially from the present case.

The offences charged, viz.: "Taking a pilot boat off of her regular station and to another port without the owner's knowledge, and putting a pilot on board an outward bound vessel without provision made for taking the said pilot off again," were found by the court to be not merely violations

of the rules and regulations of said Board, but violations of the pilotage law of the State.

One of the acts complained of was specially forbidden by the statute under penalty of deprivation of license for twelve months.

Said statute further provided that "Said Board shall have power and authority, for any cause or charge to them satisfactorily proven, to order and direct any and all pilots, for the port to which they belong, to deliver his or their licenses, and to take out a new license or licenses."

The Court says, "In fact, Sec. 1267, seems to have been intended to provide a general power in the commissioners, where it enacts, that a majority of the Board shall have power and authority to take away the license *of a pilot for a given time, or to declare his license null and void, as the nature of the case made demand upon charge of any dereliction of duty made or proven against him.*"

In that case as in *State ex rel. McDonald vs. Courtenay*, 23 *S. C.* 180, the court appears to have based the power to suspend a pilot upon express statutory authority.

The case of *Long and Clampitt vs. The Wardens of the Port of Philadelphia*, recently decided by the Court of Common Pleas, No. 3, of Philadelphia, is not satisfactory, and affords little aid in the present case, notwithstanding it was under statutes in many respects similar to ours, and under rules of the Port Wardens identically the same as those now under consideration.

We have neither the arguments of the counsel nor the opinion of the Court, nor does it appear that any opinion was delivered.

The court sustained the demurrer to the bill, but upon which of the four causes of demurrer assigned we do not know.

It may have been held that an adequate remedy was provided by the allowance of an appeal to a Court having equity jurisdiction, as is not the case here, or it may be that the decree was made *pro forma* for the purpose of an appeal to some other Court.

It is contended with great earnestness on behalf of the defendant that this Court has no jurisdiction in the premises.

Beside the general limitations upon the powers of this Court, the following statutory limitation is relied upon: "That the Chancellor shall *not* have power to determine any matter wherein sufficient remedy may be had by common law or statute before any other court or jurisdiction of this State, but where matters, determinable at common law shall be brought before him in equity, he shall remit the parties to the common law, and when matters of fact, proper to be tried by a jury shall arise in any cause depending in Chancery, the Chancellor shall order such facts to trial issues at the bar of the Superior Court." *Revised Code, Chap.* 95, *Sec.* 1.

This is substantially the same as Section 25 of "An Act for the establishing courts of law and equity within this government," passed between 1726 and 1736, 1 *Del. Laws* 132.

In *Beeson vs. Elliott*, 1 *Del. Ch.* 386, the Court says: "what is the meaning of the word 'sufficient' in the above Act is a question which has occasioned some uncertainty as to the dividing line between the common law and equity jurisdictions."

It is well settled that in the absence of any express statutory limitation, a court of equity has no jurisdiction where there is an appropriate and adequate remedy in the courts of law, or by some other special mode provided by statute.

It is claimed in this case that the provisions of the Pilotage Act, already quoted, giving an appeal from decisions of the Board to the Superior Court, furnish a sufficient and adequate remedy to the complainant.

However sufficient and adequate may be the remedy by appeal to the Superior Court in case of a fine, it is not so in case of forfeiture of license or suspension, whether for a fixed period, or indefinitely as is proposed in this case.

This is apparent when we consider the methods of procedure on appeal directed by the Act, and the absence of any equity power in the Superior Court.

But courts of equity have not jurisdiction in all cases of forfeiture.

"Equity will not ordinarily relieve against valid for-
feitures.  A forfeiture imposed by a municipal corporation,
under legislative authority for a violation of a valid by-law,
and inflicted as a penalty for such violation, cannot be re-
lieved against in equity, unless, perhaps, where peculiar cir-
cumstances furnish grounds for equitable interposition, the
general doctrine being  that equity may relieve against for-
feitures declared by contract, but not against those expressly
declared or authorized by statute."

*Dillon on Municipal Corporations*, Sec. 352.

But this, as we have seen, is not a valid forfeiture nor a
forfeiture imposed by the defendant corporation under leg-
islative authority for the violation of said rule, nor a forfeiture
declared or authorized by statute.

The jurisdiction of the court could not be denied in this
case without overruling  *Morris vs. The Board of Pilot
Comms., supra.*

Jurisdiction was not assumed in that case by reason of
the consent of the defendant.

"If the jurisdiction do not exist, consent can not give it."
*Beeson vs. Elliott*, 1 *Del. Ch..* 383.

The clear and unequivocal language of Chancellor Wol-
cott in closing his opinion in the case of *Morris vs. The Board
of Pilot Comms.* is as follows:

"I have reserved the question of jurisdiction for the last,
because, while it was asserted that this court has not juris-
diction of the cause, yet it was not seriously contended for.
The jurisdiction of the court in this case may be rested upon
the fact that the declared intention of the Board to revoke
complainants' licenses was virtually a declaration of a pro-
posed forfeiture of their licenses, which under any view of
the case presented, as has just been shown, is not authorized
by the act.  An absolute or indefinite revocation of the li-
censes is equivalent to a forfeiture, and the action of the
Board must be so construed.

" While the general doctrine is that equity may relieve
against forfeitures declared by contract, but not against those

expressly declared or authorized by statute, yet when they are not so declared or authorized, equity will relieve by the interposition of its injunctive power."

Considering the forfeiture of pilotage fees as in effect a pecuniary fine, has the court jurisdiction in respect to it?

It is a familiar rule of equity that where the court has jurisdiction of one branch of a case; it will, for the purpose of avoiding multiplicity of actions, assume jurisdiction of the whole subject, including such matters as would not, if standing alone, have been within the jurisdiction of the Court.

This rule was applied by the U. S. Circuit Court of this district, in the case of *Creamer vs. Bowers, Dure & Co.*, 35 *Fed. Rep.* 206, in 1887, which was a suit in equity to restrain infringements of a patent which had not expired, and for an accounting for past infringements of that patent and of another which had expired. As to the patent which had expired, the Court following *Root vs. Railway Co.*, 105 *U. S.* 189, held that, as it had no right to enjoin future infringements, it had no right to order an accounting, as there was an adequate remedy at law; but as to the patent which had not expired, it was held, that, having jurisdiction to restrain future infringements, it should assume jurisdiction as to past infringements, and accordingly an injunction was awarded to restrain future infringements and an accounting ordered as to past infringements.

Here it is proposed to impose upon the complainant a single sentence, as to part of which the Court has the clear right to interpose by injunction, and this gives the Court the right to deal with the whole subject.

The decision in this case need not seriously embarrass the Board in the enforcement of said rules. It can prescribe suitable pecuniary fines for their violation, and without making such fines excessive or unreasonable, they may be fixed at such amounts as will thereafter make the practice complained of impossible.

A decree will be entered perpetually enjoining the defendant corporation:—

Opinion:—conclusion.

1. From the enforcement of the said rules, or any of them, against the complainant for his alleged violation thereof, by the penalties of suspension and forfeiture of pilotage fees, or either of them;

2. From the enforcement of the said rules, or any of them, by suspension or forfeiture or deprivation of license;

3. From the enforcement of said rules, or any of them, by any penalty whatsoever, except such as shall have been prescribed before the commission of the offense.

A decree to that effect was accordingly entered on March 3d, 1896.