115 A.2d 493 (1955)
Willard F. ANZILOTTI and Lyli B. Anzilotti, his wife, Plaintiffs,
v.
ANDREWS CONSTRUCTION CO., a Delaware corporation, Defendant.
Court of Chancery of Delaware, New Castle.
July 21, 1955.
*494 Howard M. Berg, Wilmington, for plaintiffs.
Rodney M. Layton (of Richards, Layton & Finger), Wilmington, for defendant.
MARVEL, Vice Chancellor.
On October 9, 1953, plaintiffs acquired title to a home in a development near Wilmington known as Indian Field, having purchased the property from Andrews Construction Company, the builder and present defendant. The agreement of sale, which is dated September 3, 1953, was drawn on a standard printed form used by Stanley F. Malin, the real estate agent making the sale for defendant. Under the terms of the contract plaintiffs agreed to pay a total of $29,000 for the house, payment of $18,000 of which was to be secured by a first mortgage on the property to be purchased. The payment of the balance of $9500 was to be secured by a ten year second mortgage on the new home and a judgment note. A memorandum attached to the agreement provided that if the judgment note in the amount of $5,000, collateral for the payment of which was to be furnished in the form of a second mortgage on plaintiffs' home at Carney's Point, New Jersey "is not paid within 6 months from date of settlement, purchasers agree to give title to said property, with existing first mortgage to remain, to satisfy judgment note."[1]
The agreement also provided that defendant convey good title to the property at Indian Field and defendant further undertook the following obligations: "Grounds to regraded and seeded, also purchaser to have choice of kitchen cabinets. Electric range, washing machine and two screen doors furnished also."[2]
In addition to a permanent injunction against a distraint action filed by defendant and hereinafter referred to, the complaint seeks relief in the form of specific performance of the contract allegedly made by defendant *495 under the terms of which defendant agreed to take title to plaintiffs' New Jersey property and in return to satisfy the $5,000 judgment note if plaintiffs failed to sell such property within six months after settlement. Plaintiffs also seek incidental relief for defendant's alleged breach of contractual agreements to regrade and seed the grounds, to furnish certain fixtures at the Delaware property and to perform the agreement for the sale of land on time.
Defendant, having declined to accept title to the New Jersey property and in turn to satisfy the judgment note, brought a distraint action to collect the moneys owed by plaintiffs. On plaintiffs' motion defendant was temporarily restrained from proceeding with the distraint action. A rule to show cause why a preliminary injunction should not issue as prayed for in the complaint was entered, but the parties later elected to go to trial. This is the decision of the Court after full hearing on complaint and answer. The Court also has before it defendant's motion to dismiss that part of the complaint which seeks monetary relief or the specific performance of agreements admittedly having to do with ordinary chattels.
Insofar as the judgment note is concerned, plaintiffs contend that the facts and circumstances leading up to the drafting of the complete agreement of sale including the attached memorandum as well as the language of the memorandum itself not only obligated plaintiffs to tender title to their New Jersey property, providing it had not been sold within six months after the date of settlement but also obligated defendant in turn to accept title to such property in full satisfaction of the $5,000 judgment note. Defendant on the other hand contends that the memorandum attached to the agreement constitutes at the most an offer or an option which placed defendant under no obligation and that defendant not having acted on such offer or option is entitled to proceed at law for cash in the amount of $5,000 plus interest as provided for in the note itself.
Defendant argues that under the terms of the memorandum plaintiffs agreed to "give title" to the New Jersey property to defendant and that such agreement was a mere promise to sell without a correlative promise to buy on defendant's part. Defendant insists that such a unilateral promise being merely an offer or option there is no contract, there being no implication to be found in the agreement obligating defendant to accept title in full satisfaction of the judgment note.
Defendant overlooks the fact that plaintiffs' conditional offer to convey their New Jersey property was made for a stated purpose, namely "to satisfy judgment note", which offer was, in effect, accepted by defendant when through its president it signed and approved the contract which had been negotiated and executed by its agent, Stanley F. Malin. Plaintiffs' offer while inartistically phrased, was, in my opinion, unambiguous and the evidence having to do with the drawing up of its terms does not disclose that there was such mistake or misunderstanding on defendant's part as to the actual nature of the contract it was entering into as to make the contract unenforceable.
The evidence establishes that both plaintiffs and the defendant through its agents and its president, Charles L. Andrews, had bargained for the purchase and sale of the Indian Field property with a full understanding that plaintiffs' equity in their New Jersey property must in some manner be made part of the consideration for the purchase of the Delaware property. At the beginning of negotiations plaintiffs had made it clear that they could not possibly buy the Indian Field property until they had arranged for the sale of their home in New Jersey. On the other hand defendant's president, Charles L. Andrews, while anxious to sell the house in Indian Field, had no desire to take over an old house in New Jersey as partial payment for the new home. The agreement of September 3, 1953, represented a compromise which made the sale possible. Under its terms defendant postponed and possibly avoided the necessity of taking title to a house in New Jersey which it didn't want, defendant being willing that plaintiffs receive any *496 benefits flowing from a profitable sale made within six months from settlement. On the failure of plaintiffs to sell within the six months period, however, defendant was required under the agreement to satisfy the judgment in return for title tendered by plaintiffs. A clear indication apart from the testimony of defendant's agents that defendant was aware of the possibility that it might be required to take title to plaintiffs' home in Carney's Point lies in the fact that it did not insist on being given a second mortgage on this property as provided for in the agreement. It is conceivable that even now defendant may receive more than the amount of the judgment note plus interest as a result of taking title to the Carney's Point house although the lack of any demand for the house indicates that both plaintiffs and defendant gave it an unrealistic valuation during the negotiations leading up to the September 3 agreement.
Following the drafting of the agreement plaintiffs placed the house in the hands of a New Jersey real estate agent who was authorized to sell the property for $8100. Defendant through its agent, Stanley F. Malin, had determined from conversations with agents of E. I. duPont de Nemours and Company, the original owner of the house, that if defendant became obligated to take title to the Carney's Point house, the $5,000 note could in all probability be collected.
While the agreement is unusual and lacking in refinement as to the details of the transaction, nonetheless it does in my opinion constitute an agreement for the purchase and sale of real estate and accordingly subject to specific performance. In return for tender of a deed conveying a good fee simple marketable title to the Carney's Point house, subject only to the encumbrance of the existing first mortgage, defendant will be directed to cancel the $5,000 judgment note and satisfy the judgment. While again the informality of the wording of the agreement leaves much to be desired, the Court is of the opinion that a fair construction of the contract and general rules governing specific performance require that title to plaintiffs' home be encumbered only by the existing first mortgage in order to entitle plaintiffs to the decree they seek. Defendant cannot be required to accept and pay for a title which is subject to a cloud or encumbered by any lien other than the first mortgage.
Since a suit for specific performance is in the nature of a proceeding in personam, this Court, having acquired jurisdiction of the defendant, may, subject to the rule that a decree of a court of one state cannot affect title to land in another state, direct defendant to satisfy the judgment note and in effect pay the agreed purchase price in return for tender of a deed, Penn v. Lord Baltimore, 1 Ves.Sr. 444, 27 Eng.Reprint 1132, 49 Am. Jur. 163, Specific Performance, § 140. Such a decree will, of course, have the effect of permanently enjoining action under the pending distraint proceeding.
This Court, having jurisdiction of the phase of the case having to do with specific performance of an agreement for the sale of land, will, for the purpose of avoiding a multiplicity of actions assume jurisdiction of the whole subject of the contract between the parties including such matters as would not, standing alone, have been within the jurisdiction of the Court, Virden v. Board of Pilot Commissioners, 8 Del.Ch. 1, 67 A. 975; Wright v. Scotton, 13 Del.Ch. 402, 121 A. 69, 31 A.L.R. 1162; Cohen v. Markel, Del.Ch., 111 A.2d 702.
Plaintiffs will be awarded damages for defendant's defaults on its following contractual undertakings. There appears to be no disagreement as to the failure of defendant to furnish kitchen cabinets and as to the type actually selected by plaintiffs. Plaintiffs will be awarded damages as proved. I also find that defendant has failed to regrade and seed the grounds surrounding the house at Indian Field as provided for in the contract and that a reasonable construction of the contract between the parties requires defendant to furnish an operable washing machine. The evidence discloses that the available pipe connection for discharging water from the furnished *497 washing machine at the Indian Field home does not function. Interest on the $5,000 judgment note and on the first mortgage on plaintiffs' New Jersey home has continued to accumulate to plaintiffs' damage as a result of defendant's failure to take title to the New Jersey house and satisfy the judgment note at the stipulated time.
While the Court has found that plaintiffs are entitled to damages as a result of defendant's default in its undertakings to regrade and seed, to furnish a washing machine and to perform an agreement for the sale of land at the agreed time, proof of such damages is incomplete in the present record.
Counsel may confer with the Court as to what further proceedings are required to determine not only the status of title to plaintiffs' New Jersey house but also the extent of plaintiffs' damages prior to the entry of a decree in conformity with this opinion.
NOTES
[1] The agreement of sale refers to a second mortgage "as per attached statement", and while there is some conflict in the testimony as to when the attachment was added to the agreement, I find that it was so affixed when the parties executed the agreement which is in evidence as plaintiffs' exhibit No. 2. There is no evidence that a second mortgage on the New Jersey property was in fact taken by defendant.
[2] The typewritten additions to the agreement are not artistically drawn. They are the work product of employees of Stanley F. Malin, real estate agent and not of the parties' attorneys.