# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN THE MATTER OF            )
THE ESTATE OF               )          C.A. No. 2018-0741-PWG
MEREDITH L. SULLIVAN        )

## MEMORANDUM OPINION

Date Submitted:  September 2, 2021
Date Decided:  September 16, 2021

Charles J. Durante, Scott E. Swenson, and Shaun Michael Kelly, of CONNOLLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Petitioner Luke R. Chapman.*

Jason C. Powell and Thomas J. Reichert, of THE POWELL FIRM, LLC, Wilmington, Delaware, *Attorneys for Respondents Faye Sullivan, Thomas Sullivan, III and Jessica Sullivan.*

**GLASSCOCK, Vice Chancellor**

The Masters in Chancery have been doing creditable and honorable service in courts of equity dating back to the original English court. It is an understatement to say that, within the arenas of equity over which they typically preside, Masters' experience is the equal of that of the other judicial officers on this Court; their judgment is also equivalent, I believe. It is not surprising that at least four Masters in Chancery have become constitutional judges, including two current Vice Chancellors. It is an unfortunate historical artifact, in my view, that unlike, say, Superior Court Commissioners (who are also respected jurists who play an indispensable part in the administration of justice in the law court) the judicial decisions of Masters in Chancery are, effectively, precatory. That is, these decisions, including findings of fact based on testimony at trial, are entitled to no deference on appeal. Upon such an appeal—denominated "exceptions" to the Master's "report"—a Chancellor or Vice Chancellor must undertake a full *de novo* review of findings of law *and* fact. To the extent the forgoing may be viewed solely as the grumbling of a judicial officer disgruntled by being forced into effort best avoided, it is not merely that. *De novo* review of Masters' decisions creates unnecessary uncertainty, delay, and expense for litigants. It encourages long-shot appeals, because the losing party is able to proceed with a clean slate. It delays justice in the case being reviewed, and the other cases pending in the Court which are behind it in the judge's queue. The work the Masters do adds much efficiency and value to the

1

Court; given the current caseload, they are indispensable. But their utility is diminished by the required *de novo* review.

Before me are exceptions by all parties to the Master in Chancery's final report in this matter dated February 22, 2021 (the "Report").[1] At issue is the proper beneficiary under three policies of insurance on the life of the decedent, Meredith L. Sullivan ("Ms. Sullivan" or the "Decedent"). The facts of the case are salacious and sensational. Ms. Sullivan was a Delaware resident and an employee of the University of Delaware. While married to the Petitioner, Luke Chapman ("Mr. Chapman" or the "Petitioner"), Ms. Sullivan became romantically involved with a co-worker, also married. Presumably upon learning of this fact, Mr. Chapman sought a divorce. Thereafter, Ms. Sullivan moved to Pennsylvania and began working for another college. The wife of her paramour traveled to Ms. Sullivan's home in Pennsylvania, fatally shot Ms. Sullivan, then committed suicide. At the time of her murder, the Family Court had issued a decree of divorce in Ms. Sullivan's case, although she had not yet received word that she had become divorced.[2]

The primary issue addressed by the Master upon the Petitioner's Motion for Judgement on the Pleadings and to Dismiss the Counterclaim, and now before me *de novo,* is deceptively straightforward: which state's law applies to the life

---

[1] *In the Matter of the Estate of Meredith L. Sullivan*, 2021 WL 668005 (Del. Ch. Feb. 22, 2021) [hereinafter "*In re Sullivan*"].
[2] *See generally id.* at *1.

insurance policies?  They were issued in Delaware to a then-Delaware resident, but the benefits were payable on the death of a Pennsylvania domiciliary.  The question is outcome-determinative; under the Pennsylvania statute, where (as in the instant case) the contract of life insurance designates a spouse as beneficiary, and where subsequently the owner of the policy becomes divorced but has not changed the beneficiary at death, public policy requires the presumption that that the decedent nonetheless intended to remove the ex-spouse, and substitute the successor beneficiaries or the decedent's estate as the beneficiary.  Delaware, by contrast, has evidenced no such legislative intent; under Delaware common law, the contract itself controls, here leading to ex-husband Mr. Chapman remaining the beneficiary, as designated in the policies.

The Petitioner, Mr. Chapman, accordingly advocates for the application of Delaware law to the three policies; the Respondents, the alternative beneficiaries under one of the policies (and one of whom is the administratrix of the Decedent's estate), [3] conversely advocate for the law of Pennsylvania.

Resolution of this choice of law issue, under applicable Delaware law, is subject to the analysis of the Restatement (Second) of Conflict of Laws (the

---

[3] There are no contingent beneficiaries associated with the individual policies, which state that the proceeds will be paid to the Decedent's estate if no beneficiary is entitled to payment at the time of a claim.  *See id.* at *1 n.7.

3

"Restatement").[4]   Under that analysis, the Master concluded, two individual life insurance policies owned by Ms. Sullivan are controlled by the law of Pennsylvania. The third policy at issue, a group policy taken out on behalf of Ms. Sullivan by her former employer, the University of Delaware, is subject to Delaware law.   In addition, the Master found that a counterclaim brought by the Respondents for equitable relief failed to state a claim upon which relief could be granted.  I find the facts largely undisputed, and in any event, upon the required review *de novo*, I make the same factual conclusion as did the Master.   In addition, I reach the same conclusions of law as did the Master in her Report.

My reasoning follows.

## I.   FACTS

The adumbration of the facts that follows is sufficient to this Memorandum Opinion; for a more detailed statement, see the Report, the facts of which, upon *de novo* review, I have adopted.

The Decedent and the Petitioner were married in 2009.[5]  As of February 2018, the Decedent was a Delaware domiciliary.[6]  At that time, the Petitioner filed for divorce.[7]  Shortly thereafter, the Decedent left Delaware and became a domiciliary

---

[4] Restatement (Second) of Conflict of Laws (Am. Law. Inst. 1971).
[5] *In re Sullivan*, 2021 WL 668005 at *1.
[6] *See id.* at *5.
[7] *Id.* at *1.

4

of Pennsylvania, where she was living at the time she was murdered, on April 23, 2018.[8] Shortly before her death, the Family Court of Delaware entered a decree of divorce.[9]

At her death, the Decedent's life was insured by three policies.[10] Two were individual policies (the "Individual Policies") owned by the Decedent, issued by the Massachusetts Mutual Life Insurance Company ("MassMutual").[11] The Petitioner was the sole designated beneficiary on the Individual Policies.[12] Should the Petitioner predecease the insured, the benefits on the Decedent's death would flow to her estate, currently open in Pennsylvania.[13] The Petitioner had previously opened an estate in New Castle County, but his letters of administration were revoked by the Register of Wills.

Decedent's life was also insured by a group policy (the "Group Policy") extended to her by her former employer, the University of Delaware.[14] The insurer for the Group Policy was Metropolitan Life Insurance Company ("MetLife").[15] The Petitioner was the primary beneficiary of this policy, that is, entitled to all the benefits thereof; should he predecease the Decedent, the policy named the

---

[8] *Id.* at *2.
[9] *Id.* at *1.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Respondent Faye Sullivan, the Decedent's mother, is administratrix of the Decedent's estate.
[14] *Id.* at *8.
[15] *Id.*

Decedent's mother, sister and brother[16] (the "Respondents") as contingent beneficiaries to receive the benefits.[17]

The benefits of all three policies were paid by the insurers to the Petitioner, in 2018.[18]

## II.    PROCEDURAL HISTORY

This litigation was originally brought to reverse the revocation of Petitioner's letters of administration.[19] I will omit much of the procedural history of the litigation before the Master, which history the interested reader[20] may find in the Report. Currently before me is Petitioner's Amended Petition filed in June 2019.[21] Salient here in that Petition is a request for a declaration that Delaware law applies to the Individual and Group Policies, leading to the proceeds being payable to the Petitioner.[22] Respondents filed a counterclaim alleging that all the policies are subject to Pennsylvania law, which as laid out above, adopts, by statute, a public policy of revocation of the designation of an ex-spouse as beneficiary, upon divorce (the "Counterclaim").[23] Notably, neither the Individual Policies nor the Group

---

[16] Faye, Jessica, and Thomas Sullivan, respectively.
[17] *Id.* at *1.
[18] *Id.*
[19] Am. Pet. for Rev. of Revocation of Letters of Admin. & for Declaratory J., Dkt. No. 16.
[20] If any.
[21] *Id.*
[22] *Id.* ¶ 67.
[23] *In re Sullivan*, 2021 WL 668005 at *2.

Policy contains a choice of law provision.[24] The principal issue thus before me is choice of law. The Counterclaim also seeks equitable relief, should I find Delaware law applicable.

The Report resolved the Petitioner's Motion for Judgment on the Pleadings on the choice-of-law issue, and also Petitioner's Motion to Dismiss Respondents' equitable counterclaim.[25] The Master found that Pennsylvania law applies to the Individual Policies, that Delaware law applies to the Group Policy, and that the equitable relief requested in the Counterclaim fails to state a claim.[26] Each of these findings was subject to exception from one party or the other; all must therefore be addressed *de novo*. For the reasons below, I agree with the Master on all counts.

## III.     ANALYSIS

The standard for review of a motion for judgment on the pleadings is similar to that on a motion to dismiss under Rule 12(b)(6);[27] I must view the well-pled facts in the pleadings in the way most favorable to the non-moving party, together with reasonable inferences therefrom.[28] Only if upon such a review it appears that no material factual issue is present, and the movant is entitled to a judgement as a matter of law, may the motion be granted.[29]

---

[24] *Id.* at *3.
[25] *See generally id.*
[26] *See generally id.*
[27] *McMillan v. Intercargo Corp.,* 768 A.2d 492, 500 (Del. Ch. 2000).
[28] *Id.*
[29] *Id.* at 499.

7

Delaware law is contractarian; it respects the rights of parties as set forth in written contracts, and, if unambiguous, enforces them as written.[30] A similar spirit permeates the construction of a decedent's wills.[31] An exception to the latter occurs where a married person makes a will and designates a spouse as beneficiary, divorces, and then dies with the pre-divorce will in place. In such a case, the Delaware legislature, as a matter of public policy, has provided that it is likely that the intention of the decedent will best be expressed by enforcing the testamentary document as though the ex-spouse has predeceased the decedent.[32]

What of life insurance policies? If the same scenario exists—spouse as designated beneficiary, then divorce, then the death of insured with pre-divorce policy in place—the Delaware legislature has not acted. Under the common law, the insurance policy is a type of contract, and the parties are held to their unambiguous bargain, which in this scenario requires the insurer to pay the death benefit to the designated beneficiary despite the change in marital status.[33]

---

[30] *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("Delaware upholds the freedom of contract and enforces as a matter of fundamental public policy the voluntary agreements of sophisticated parties.").

[31] *See, e.g.*, *In re Will of Fleitas*, 2010 WL 4925819, at *4 (Del. Ch. Nov. 30, 2010) ("[W]here the language of a will is unambiguous, the court must enforce its terms as written . . . .").

[32] 12 *Del. C.* § 209.

[33] *See Emmert v. Prade*, 711 A.2d 1217, 1219 (Del. Ch. 1997) (holding that reformation was inappropriate with respect to unambiguous life insurance beneficiary designation despite will expressly disinheriting named beneficiary).

Pennsylvania's legislature has addressed this issue. It applies the presumption that the intent of the insured would be to treat the ex-spouse/beneficiary as though he or she has predeceased the testator, or the insured, in either scenario.[34] Here, the Decedent became insured while in Delaware, but was a Pennsylvania domiciliary at the time she was killed. Unsurprisingly, the parties advocate for a choice of law position consistent with their financial self-interest.

### A.    Choice of Law

Delaware generally follows the choice-of-law scheme set out in the Restatement.[35] That scheme generally applies a "most significant relationship" test to the jurisdictions in question.[36] The parties agree that Delaware law has a "revocation on divorce" ("ROD") provision at 12 *Del. C.* § 209, but that such automatic revocation applies only to decedent's wills, and not to life insurance policies.[37] They agree that Pennsylvania has an ROD statute[38] that, if applicable here, would treat the Petitioner as having predeceased under the Policies. In that case, benefits from the Individual and Group Policies would flow to the Decedent's Estate and the alternative beneficiaries, respectively. They also agree that the specific question of choice of law in this situation is one of first impression in

---

[34] 20 Pa. Cons. Stat. § 6111.2(c)(1) (2010).
[35] *PharmAthene, Inc. v. Siga Techs., Inc.*, 2008 WL 151855, at *7 (Del. Ch. Jan. 16. 2008).
[36] *Id.*
[37] 12 *Del. C.* § 209.
[38] 20 Pa. Cons. Stat. § 6111.2 (2010).

Delaware. It is clear that the laws of the competing jurisdictions are in conflict, and that none of the Policies contains a choice-of-law provision.[39] Because there are differences in the relationships with the jurisdictions posed by the Individual Policies as opposed to the Group Policy, I analyze them separately.

1.  Choice of Law and the Individual Policies.

The Individual Policies were owned by the Decedent. She contracted[40] with MassMutual to insure her life, and entered the contracts forming the Individual Policies in Delaware.[41] She died a resident of Pennsylvania, at which point benefits under the policy became payable. Her estate is a Pennsylvania estate. Payment of premiums would have been made from the Decedent's domicile; it appears that those payments were made from Delaware, although I may presume they would have been thereafter made from Pennsylvania. Delaware has expressed no particular interest in the issue of the public policy of applying the ROD presumption to life insurance proceeds; the Pennsylvania legislature has done so, applying the ROD presumption by statute.[42] Upon this framework, I apply the factors of the Restatement.

Before I do, let me address an argument of the Petitioner that to my mind is a red herring. The Petitioner posits that the dispute over the insurance benefits is really

---

[39] *In re Sullivan*, 2021 WL 668005 at *3.
[40] The role of the Petitioner in procuring these policies is discussed in connection with the equitable relief sought by the Counterclaim, below.
[41] Tr. of 4.9.20 Telephonic Oral Arg. on Pl.'s Mot. for Summ. J., 33:23–34:6, Dkt. No. 48 [hereinafter "Oral Arg."].
[42] *See supra* notes 36–37 and accompanying text.

a dispute over the decree of divorce issued by the Delaware Family Court, and therefore relies on the observation by this court in *Richetti v. Sanzo*[43] that "the law of the state in which a divorce decree is rendered should govern disputes concerning its interpretation and effect."[44] This holding is axiomatic, but inapplicable. The insurance proceeds are not marital assets, and this case does not involve interpretation of the Family Court decree. Nor is its "effect" at issue: Pennsylvania law applies ROD in this situation where a petition for divorce is *sought*, regardless of whether a decree has issued.[45] The interest of Delaware in having Delaware law apply to Delaware court orders is simply absent here, and *Richetti* is of no effect.

Section 6 of the *Restatement* provides the general framework for the analysis. Absent (as here) a statutory provision dictating the choice of law, the court must consider:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.[46]

---

[43] 1994 WL 18683 (Del. Ch. Jan. 5, 1994).
[44] *Id.* at *1.
[45] 20 Pa. Cons. Stat. § 6111.2(a)(3)(ii) (2010).
[46] Restatement (Second) of Conflict of Laws § 6(2) (Am. Law. Inst. 1971).

Of these, I note, of principal interest here are the relevant policy of Delaware, which is limited primarily in this instance to the common-law expressed sanctity of contract; the relevant policy of Pennsylvania, enforcing the presumed intent of a Pennsylvania decedent; the protection of justified intentions; and the basic policies underlying contractual and insurance law. These general principles are informed by Sections 188 and 192 of the Restatement. When addressing the factors enumerated in the Restatement, of course, the process is qualitative, not quantitative. In other words, the degree to which factors apply to the issues involved is more important than the absolute number that militate for one jurisdiction rather than another.[47]

Section 188 applies to contracts in general.[48] In the absence of a choice of law provision, to determine the jurisdiction with the most significant relationship to the contact, a court should consider the place of contracting (Delaware), the place of negotiation (presumably Delaware, although the Individual Policies appear to be formulaic policies of the insurer), the place of performance (which is not applicable, here, because it is not certain at the time of contracting), the location of the subject matter of the contract (the life of Decedent, again not certain as of the time of contracting and thus not instructive) and the domicile, place of incorporation and

---

[47] *See id.* at cmt. c ("Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law"); *see also Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 465 (Del. 2017) (stating that the factors in a § 193 choice-of-law analysis should be assessed according to their "relative importance in the particular case").

[48] Restatement (Second) of Conflict of Laws § 188 (Am. Law. Inst. 1971).

place of business of the parties (indeterminate because the Decedent was domiciled in Delaware at the time of contracting and in Pennsylvania at the time of performance).[49] I find these factors inconclusive. The Restatement provides further guidance specific to life insurance at Section 192, however.[50]

Section 192 provides that where the validity of a life insurance policy is at issue, or where (as here) the issue is the rights created by the policy, the law of the jurisdiction in which the insured was domiciled when the contract was formed is the default choice.[51] This makes sense in terms of the general factors of Restatement Section 6. If the issue is validity, both parties' expectations would be met by the law of the forum, and the forum also has an interest in the contractual rights and responsibilities undertaken by its domiciliary. The Restatement provides an exception to this general rule, however. If with respect to the "particular issue" at bar, some other state has a more significant relationship as determined generally by applying the factors enumerated in Section 6, the law of that jurisdiction shall apply.[52] That, I find, is the case here.

The particular issue at hand does not involve the validity of the policy. Both jurisdictions would enforce the policy. Nor is the issue the rights of the policy holder

---

[49] *Id.* § 188(2).
[50] *Id.* § 192.
[51] *Id.*
[52] *Id.*

(or the insurer) under the policy. The only right before me is that of third-party beneficiaries to receive benefits under the policies. The Decedent had a contractual right under the policies to designate her beneficiary. Delaware presumes that her intent as explicitly expressed in the Individual Policies represents her contractual intent, as the beneficiary designation (and therefore the Decedent's intent) remained unchanged at death. Pennsylvania presumes that her intent changed upon the petition to divorce, and gives effect to this presumed change in intent by the application of the ROD statute. Which state bears the most significant relationship with respect to this issue?

I start with the presumption that Delaware law applies, consistent with the default provision of Section 192. I then examine the Section 6 factors in light of the particular issue involved: intent of the Decedent as to the applicable beneficiary at the time of death.

Again, Section 6 sets out seven factors, 6(a) through 6(g).[53] Part 6(a) invokes the needs of the interstate/international system. I find this inapplicable because the limited issue here, the identity of the beneficiary, is not germane to this interest. Part 6(d) involves the protection of justified expectations. Neither the justified expectations of the insurer or the decedent are involved here. Moreover, while third-party beneficiaries, including designated beneficiaries under a contract of life

---

[53] *See supra* note 45 and accompanying text.

insurance, have the capacity to enforce the agreement, the beneficiary under such a policy has little justified reliance on the question of ROD policy, which itself is about fulfilling the presumed intent of the contracting party with the appointment power, the insured.[54] Part 6(e), which implicates the "basic policies" of insurance law, militates for neither jurisdiction. Parts 6(f) and 6(g), which involve certainty of result and ease of identification of applicable law, favor Delaware law.

This leaves the factors set out in Parts 6(b) and 6(c), which invoke "the relevant policies of the forum" and "other interested states." With respect to the issue of the ROD presumption at issue here, both of these factors favor Pennsylvania. Both Delaware and Pennsylvania, as a matter of policy, make the intent of the actor (the testator of a will, or the parties to contracts) the touchstone of interpretation of instruments.[55] Both determine that intent from the unambiguous words of written instruments.[56] Both recognize an exception for a decedent's will, where public policy, expressed by statute, supports a particular presumption: that the testator's intent is that a designated beneficiary in an unambiguous will is nonetheless not the intended recipient of the testator's bounty if the beneficiary is an ex-spouse and the designation as an ex-spouse temporally precedes the divorce.[57] Pennsylvania has a

---

[54] *See Sveen v. Melin*, 138 S. Ct. 1815, 1823 (2018) ("[A]n insured cannot reasonably rely on a beneficiary designation remaining in place after a divorce.").

[55] *See Emmert*, 711 A.2d at 1219 (indicating that interpreting an insurance contract per its unambiguous beneficiary designation gives effect to the original intent of the parties).

[56] *Id.*

[57] *See* 12 *Del. C.* § 209; *see also* 20 Pa. Cons. Stat. § 6111.1 (2010).

policy, provided via statute, extending that presumption to designation of beneficiaries of life insurance, as well.[58] This represents a clearly articulated legislative finding that the intent of the insured is best reflected by the ROD presumption. Delaware has not articulated a policy on this issue with respect to life insurance policies, allowing the default contractual rule—enforcing the agreement as written—to prevail. Moreover, Delaware has no particular public policy concern involving Pennsylvania domiciliaries, like the Decedent here. Pennsylvania, by contrast, has a significant policy interest in ensuring the vindication of the intent of its domiciliary regarding who should receive the domiciliary's life insurance benefits.

With regard to the issue of who is to receive benefits as a designated life insurance beneficiary, then, the interests of certainty and ease in determination of the applicable law—set forth in Parts 6(f) and 6(g)—support the default "place of contracting rule" of Section 192; the interests in Parts 6(b) and 6(c) support application of Pennsylvania law. I find, on weighing these interests, that for the "particular issue" involved, Pennsylvania's relationship is more profound. With respect to designation of a beneficiary, certainty is a second-order consideration in the case of the Individual Policies, because the contracting party—the insured— retains the right to appoint new beneficiaries at will. And with respect to policy of

---

[58] 20 Pa. Cons. Stat. § 6111.2 (2010).

16

the jurisdiction, Delaware has not expressed a strong interest in application of ROD, unlike Pennsylvania,[59] and Pennsylvania surely has more interest in the vindication of the intent of its residents than Delaware has over non-residents.

This determination is bolstered by Comment d. to Section 192. The Comment applies to change in domicile by the insured, post-contract. "In such a situation, the state of the insured's new domicil will have the dominant interest in him, and it may be that its local law should be applied to at least some issues arising under the policy. The local law of the insured's new domicil is most likely to be applied in the case of issues that do not substantially affect the obligations of the insurance company."[60] The Comment then proceeds to give exemplars of such situations, starting, significantly, with the precise situation presented here. "So, for example, if the insured has appointed his [spouse] as a beneficiary, the local law of the new domicil[e] might well determine whether the appointment of the spouse as beneficiary is automatically revoked by a divorce."[61] The Comment supplies other

---

[59] *See generally Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 821 (Del. Ch. 2020) ("Against this fundamental interest, Delaware has only a generalized interest in promoting freedom of contract. As this court has explained, when a state has a specific public policy interest in regulating a particular substantive area, that policy interest will typically override overrides [sic] a generalized interest in promoting freedom of contract.").

[60] Restatement (Second) of Conflict of Laws § 192 cmt. d (Am. Law. Inst. 1971). Under Pennsylvania law, the obligations of the insurance company are specifically protected by statute: "[N]o insurance company . . . shall be liable for making payments to a spouse or former spouse which would have been proper in the absence of this section." 20 Pa. Cons. Stat. § 6111.2(c) (2010).

[61] Restatement (Second) of Conflict of Laws § 192 cmt. d (Am. Law. Inst. 1971).

examples, and explains why some, unlike the ROD situation, significantly impinge on the burdens of the counterparty insurer, and are thus problematic.[62]  For the reasons given above, I find the reasoning of Comment d. persuasive with respect to the limited issue here, application of the ROD presumption.  I find that Pennsylvania is the jurisdiction with the most significant relationship to this issue, and that Pennsylvania law accordingly applies.

2.      Choice of Law and the Group Policy.

I will not repeat the predicate to the analysis above, many factors of which apply to the Group Policy.  There is a fundamental difference, however, between the Group Policy and the Individual Policies.  The contracting parties to the Individual Policies were the purchaser and owner of the policy, the Decedent—a Delaware resident when the contracts were entered but a Pennsylvania domiciliary at the time the insured life ended—and her insurer, MassMutual.  By contrast, the contracting parties to the Group Policy were the purchaser, the University of Delaware, obviously a Delaware resident, and its insurer, MetLife.  The Group Policy, by its nature, was one of a series of policies offered by the University to its Delaware employees, presumably under an overriding master policy.  The same Restatement factors apply as with the Individual Policies, but they must be weighted differently—

_____

[62]  Comment (d) ends by noting that due process interests may obtain and that "[e]xisting authority is too fragmentary to permit the statement of definite rules."  *Id.*

18

I find that the importance of certainty and clarity as to applicable law are more weighty factors here, given the uniform nature of the group of policies at issue. This analysis, too, finds resonance with the commentary on Section 192. Comment h. provides that "the rights of a particular employee against the insurer will usually be determined . . . , at least as to most issues, not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy."[63] Comment h. notes that the applicable law thus "will usually be the state where the employer has his principal place of business," and notes that applying the law of this jurisdiction with the most significant relationship with the master policy is desirable so that "each individual insured should enjoy the same privileges and protection."[64] I find that with respect to the Group Policy, the interests of certainty, including the certainty and uniformity of the benefits provided by the group insurance to covered individuals, outweigh the interests of the state of the Decedent's domicile in construing the policy, including the ROD presumption. Accordingly, Delaware law applies to the Group Policy.

---

[63] Restatement (Second) of Conflict of Laws § 192 cmt. h (Am. Law. Inst. 1971).
[64] *Id.*

*B.* *The Respondents' Counterclaim for Equitable Relief*

The Respondents argue that—notwithstanding my finding, above, that Delaware law applies to the Group Policy—the benefits under the Group Policy should be put in a constructive trust for the benefit of the Respondents.[65]

A constructive trust is not a trust created by the intentions of a settlor. Instead, it is an equitable remedy that may be imposed where a party's actions with respect to specific property are fraudulent or unconscionable; in a proper case equity will regard the innocent party as the beneficial owner of such property.[66]

The Respondents here point out that the Petitioner was an insurance agent,[67] and that he changed his own life insurance beneficiary (removing the Decedent as beneficiary) prior to filing for divorce.[68] Thus, I may make the reasonable inference that Petitioner had knowledge that Delaware did not have a ROD provision applicable to life insurance. Respondents allege that Petitioner brokered the sale of

---

[65] The Respondents also asserted a right to have the proceeds placed in a resulting trust in their favor. However, Respondents' counsel (not the same counsel who drafted the counterclaims) was unable to articulate this theory at oral argument, and in any event it appears to be without merit. To the extent not waived, the claim for a resulting trust is dismissed.

[66] *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982) ("[A] constructive trust does not arise from the presumed intent of the parties, but is imposed when a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty."); *see also Hogg v. Walker*, 622 A.2d 648 (Del. 1993) ("When one party, by virtue of a fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed.").

[67] Oral Arg. 15:12-16.

[68] *See id.* at 16:1-8.

20

the Decedent's Individual Policies with MassMutual.[69]  As a result, they posit that the Petitioner was the Decedent's insurance agent at the time he filed for divorce, and had a fiduciary duty to advise her to change her beneficiary designation in the Policies to remove him as an object of her bounty.[70]

The parties disagree as to whether the relationship of insurance agent and client implicates fiduciary duties.  I need not reach this issue, because the Counterclaim does not allege that the Petitioner was the insurance agent for the Group Policy, the proceeds of which are the only property to which a constructive trust could apply.

The Respondents have simply pled no facts which, if true, could plausibly result in a finding that the Petitioner's actions with respect to the beneficiary designation on the Group Policy were fraudulent or unconscionable.  The Respondents fail to state a claim under which it is reasonably conceivable that they are entitled to a constructive trust over the Group Policy proceeds.[71]

---

[69] Resp'ts' Opening Br. in Supp. of Their Exceptions to Master's Final Report Dated Feb. 22, 2018, at 4.
[70] *Id.* at 18.
[71] The Respondents also allege that the Petitioner was the "financial advisor" to his wife, and thus breached fiduciary duties by not advising her to change the beneficiary designation on the Group Policy once he filed for divorce.  The assertion of an equitable relationship based on a common law "financial advisor" status arising between a husband and wife in the midst of divorce, assuming such may exist, is entirely conclusory here.  It is not reasonably conceivable, based on the well-pled allegations of the Counterclaim, that such a relationship existed at the applicable time, that it involved a duty to recommend a change of beneficiary for the Group Policy, or that unconscionable actions of the Petitioner support imposition of a constructive trust on this theory.

## IV. CONCLUSION

For the reasons above, upon *de novo* review, I adopt the facts and legal conclusions recommended by the Master. I find that the law of Pennsylvania applies to the Individual Policies, that Delaware law applies to the Group Policy, and that the Counterclaim fails to state a claim for equitable relief.

The exceptions by the Petitioner to the Master's February 22, 2021 Final Report are DENIED. The exceptions by the Respondents to the Master's February 22, 2021 Final Report are DENIED. The matter is remanded to the Master for any further proceedings appropriate. IT IS SO ORDERED.