**Monica Lewis HOGG, Plaintiff Below, Appellant,**

v.

**Gerald H.E. WALKER, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 17, 1993.

Decided: March 16, 1993.

Rehearing Denied April 8, 1993.

Kester I.H. Crosse, Potter, Crosse & Leonard, P.A., Wilmington, for appellant.

Michael J. Goodrick and David S. Lank, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for appellee.

Before HORSEY, MOORE and WALSH, JJ.

MOORE, Justice.

The plaintiff, Monica Lewis Hogg, appeals from the Court of Chancery's refusal to grant her petition for a Rule to Show Cause and Writ of Attachment to compel the distribution of an $8,000 corpus held in a constructive trust by the defendant Gerald Walker ("Walker"). Because the defendant had dissipated the trust corpus, the Court of Chancery ruled that it could not compel the defendant to disgorge that which he did not have. Hogg challenges this ruling on several grounds. Her primary claim, however, is that the court erred as a matter of law in concluding that the defendant's disposal of the *res* of the constructive trust precludes its enforcement. We conclude that the Court of Chancery erred in failing to use its equitable powers to shape an appropriate remedy to compel the asset distribution of the plaintiff's constructive trust or its equivalent. Accordingly, we reverse.

## I.

In 1978, the plaintiff and Walker were close personal friends. Hogg wanted to buy a house, but lacked sufficient credit to do so. Walker had a stable employment and earnings history, and he agreed to help Hogg buy a row house in Wilmington. On June 20, 1978, Walker executed an installment sales contract for the house with the Administrator of Veterans Affairs ("V.A.") for $14,500. Hogg provided the down payment for the purchase. Additionally, Hogg and Walker verbally agreed that Hogg would occupy the premises and make the monthly installment payments.

Thereafter, the personal relationship between Hogg and Walker deteriorated and eventually became hostile. On January 10, 1979, the parties entered into an "Assignment of Installment Contract," wherein Walker assigned to Hogg "all his right, title and interest" to the property. Additionally, Walker "assign[ed], transferr[ed], convey[ed], release[d], and [sold] all of his right, title and interest to all credits, equities, rights and privileges" to which he was entitled pursuant to the sales contract to Hogg. This assignment was not sent to the V.A. until May, 1983, and the V.A. rejected it upon receipt.

From 1978 to 1987 Hogg sporadically made monthly payments under the installment sales contract, but was frequently in arrears. The record, however, is not clear on the actual number of payments Hogg missed. Nonetheless, since Walker was legally obligated under the terms of his agreement with the V.A. to make the monthly payments, the V.A. sent him notices of arrearage and he consequently paid a number of past due installments.

Prior to 1987, Walker filed a series of actions against Hogg, including suits for ejectment, contractual damages, and to foreclose upon Hogg's equitable interest in the property. Walker mistakenly believed that his assignment of the installment contract to Hogg had been accepted by the V.A., and that the equitable foreclosure action in Chancery was necessary to obtain legal title to the property. Upon learning that the V.A. had refused the assignment, Walker obtained a dismissal of the action in the Court of Chancery, apparently assuming that Hogg no longer had an enforceable interest in the property.

At a later unspecified date Walker encumbered the property with a mortgage to secure a personal loan. In April, 1987, Walker paid the outstanding balance owed to the V.A. and received a deed to the property in his name.[1] After Walker obtained legal title, Hogg was evicted from the property by an order of the Superior Court dated May 27, 1987.

Hogg filed this suit in equity in June, 1987, seeking imposition of a resulting or constructive trust on the property. With the suit in Chancery pending, Walker arranged to sell the property in November, 1987. Upon learning this, Hogg filed a motion to hold the sale funds in escrow, which the Court of Chancery denied. Although that particular sale was not consummated, Walker did sell the property on February 22, 1988, for $30,318.62 in cash. Hogg then sought a resulting or constructive trust on the proceeds of the sale.

On October 27, 1989, the Court of Chancery found that Walker's legal ownership was subject to a resulting trust in favor of Hogg because of the latter's equitable title to the property. Upon Walker's sale of the property, however, the court held that a constructive trust arose in favor of Hogg with respect to the proceeds in the amount of $8,324.58. The court determined the amount by offsetting $21,994.04 against the proceeds, consisting of $8,205 in installment payments made by Walker, together with Walker's final payment of $13,789.04 to satisfy the installment sales contract.

After further disputes between the parties, in July 1991 the Court of Chancery held that Walker had taken possession of an $8,000 trust corpus after the sale of the property, and that the corpus had to be distributed to Hogg. Despite this ruling, Walker did not pay the trust corpus to Hogg, and Hogg filed a petition for a rule to show cause or for writ of attachment. Walker responded to the motion by contending that the proceeds had been dissipated, and there remained no corpus upon which the constructive trust could attach.

On September 10, 1992, the Vice Chancellor stated in a letter opinion that "constructive trust exists only insofar as a beneficiary can identify the trust property or proceeds," and that a beneficiary is not entitled to a general lien on the trustee's non-trust-related property. Accordingly, the court held that when Walker dissipated the corpus of the trust, a general lien could not be imposed on Walker's nontrust-related property. Thus, Hogg could not invoke equity's civil contempt power to compel Walker to disgorge what he did not possess.

The Court of Chancery denied a subsequent motion for reconsideration on two grounds. First, the motion was not timely filed. Second, even if timely filed, the court considered the motion to be an attempt to "reargue [Hogg's] right to obtain a personal judgment against the defendant" for breach of trust.. The court stated that it had not made any determination that Walker had violated his fiduciary duties as constructive trustee.

## II.

In denying the motion for a Rule to Show Cause, the Court of Chancery ruled that enforcement of the constructive trust was prevented by the absence of a trust *res.* We review such conclusions as a question of law. *See Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927, 930 (1982).

---

1. The record does not establish whether the personal loan was used to pay off the installment sales contract. However, the Vice Chancellor determined that question to be irrelevant.

The doctrine of constructive trust effectuates the principle of equity that one who would be unjustly enriched, if permitted to retain property, is under an equitable duty to convey it to the rightful owner. It is an equitable remedy of great flexibility and generality, and is viewed as "a remedial [and] not a substantive" institution. *McMahon v. New Castle Associates,* Del.Ch., 532 A.2d 601, 608 (1987); RESTATEMENT OF RESTITUTION § 160. As Judge Cardozo stated in *Beatty v. Guggenheim Exploration Co.:*

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

225 N.Y. 380, 122 N.E. 378, 380 (1919). A constructive trust is not designed to effectuate the presumed intent of the parties, but to redress a wrong. When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed. *Adams v. Jankouskas,* Del.Supr., 452 A.2d 148, 152 (1982); *see also* RESTATEMENT OF RESTITUTION § 160, Comment d. Some fraudulent or unfair and unconscionable conduct is essential. *Greenly v. Greenly,* Del.Ch., 49 A.2d 126, 129 (1946).

As a remedial measure, a constructive trust avoids a continuing relationship with the beneficiary by requiring transfer of the property to the plaintiff who has established an equitable entitlement. *See Adams v. Jankouskas,* Del. Supr., 452 A.2d 148 (1982); RESTATEMENT OF RESTITUTION § 160. Indeed, the only duty of the constructive trustee is to transfer the property to the equitable owner. *Simpson v. Dailey,* R.I.Supr., 496 A.2d 126, 128 (1985). Significantly, the duty to transfer the property relates back to the date of the wrongful act that created the constructive trust. *Andre v. Morrow,* Idaho Supr., 106 Idaho 455, 680 P.2d 1355, 1363 (1984); *Pioneer Annuity Life Insurance Company v. National Equity Life Insurance Company,* Ct.App., 159 Ariz. 148, 765 P.2d 550, 556 (1989).

Historically, a constructive trust was impressed upon specific property and the legal owner was required by equity to hold that property as if upon a trust. However, Hogg does not seek to impress specific property *per se,* but rather the monetary proceeds resulting from the specific property, namely the sale of the house. The constructive trust is a remedy that relates to specific property or identifiable proceeds of specific property. *McMahon v. New Castle Associates,* Del.Ch., 532 A.2d 601, 608 (1987); *Accord,* RESTATEMENT OF RESTITUTION § 160, comment a (1937).

The constructive trust concept has been applied to the recovery of money, based on tracing an identifiable fund to which plaintiff claims equitable ownership, or where the legal remedy is inadequate—such as the distinctively equitable nature of the right asserted. *See, e.g., Adams v. Jankouskas,* Del.Supr., 452 A.2d 148 (1982). In *Adams* the relationship between plaintiff and the decedent, against whose estate he made claim, was one uniquely cognizable in equity. It was a case "in which joint funds were committed in obvious trust to one partner and then pooled to purchase property and make investments for the mutual benefit of both." *Adams,* 452 A.2d at 153. When a trustee-beneficiary relationship exists there is a conclusive presumption in equity that "a trustee dissipates or spends his or her own funds first, before touching or encroaching upon the trust funds." *People v. Barrett,* 405 Ill. 188, 90 N.E.2d 94, 98 (1950); *see also Brown & Williamson Tobacco Corp. v. First National Bank,* 504 F.2d 998, 1002 (7th Cir. 1974); *Importers' and Traders' Bank v. Peters,* 123 N.Y. 272, 25 N.E. 319 (1890).

### III.

#### A.

Courts of equity have full jurisdiction to relieve against fraud or mistake, and that power extends to cases where a person has procured a deed to property rightfully belonging to another. *See Mead-*

*er v. Norton,* 78 U.S. (11 Wall.) 442, 457–58, 20 L.Ed. 184 (1870). Where one party has acquired the legal right to property to which another has the better right, a court of equity will convert that person into a trustee of the true owner, and compel him or her to convey the legal title. *Id.*

A breach of trust, or, in other words of duty, by a trustee is a violation of a correlative right of the beneficiary, and gives rise to liability on the part of the trustee and a correlative cause of action on the part of the beneficiary for any loss to the trust estate. *Citizens & Southern Nat. Bank v. Haskins,* 254 Ga. 131, 327 S.E.2d 192, 197 (1985). The rule is applicable to positive acts, as well as omissions or negligence, which constitute a breach of duty by the trustee. *Cartee v. Lesley,* 290 S.C. 333, 350 S.E.2d 388, 390 (1986).

A trustee's liability for a breach of trust is personal in character with all the consequences and incidents of personal liability. *In re Jacobs,* 91 N.C.App. 138, 370 S.E.2d 860, 865 (1988). A trustee may be required, because of past loss of the trust corpus, to use his or her own resources to replenish the corpus. Since the liability is a personal one, it is not part of the corpus of the trust estate which the beneficiary can follow into the hands of the personal representative of the trustee, and, in respect of such liability, the beneficiary must proceed as a general creditor against the estate. *See* 76 Am.Jr.2d *Trusts* § 367.

### B.

The thrust of Walker's argument is that a constructive trustee is shielded from personal liability for his or her actions unless the trustee is sued in an action at law. However, neither a trust estate nor trust property are recognized as separate legal entities which immunize a trustee from the consequences of misconduct. George Gleason Bogert, The Law of Trusts and Trustees §§ 718, 731 (rev. 2d ed. 1982); *In re Jacobs,* 91 N.C.App. 138, 370 S.E.2d 860, 865 (1988). Moreover, general common law principles hold that a trustee's breach of trust subjects that fiduciary to

personal liability in the nature of a surcharge. IIIA Austin Wakeman Scott, The Law of Trusts, § 261 (4th ed. 1988); 76 Am.Jur.2d *Trusts* § 304. *See generally, Pennsylvania Company v. Wilmington Trust Company,* Del.Ch., 186 A.2d 751 (1962); *aff'd sub nom., Wilmington Trust Company v. Coulter,* Del.Supr., 200 A.2d 441 (1964).

When a plaintiff succeeds in enforcing a constructive trust, courts treat that beneficiary as if he or she were enforcing a duty to deliver property under an express trust. George Gleason Bogert, The Law of Trusts and Trustees § 471, at 6–7 (2d ed. 1982); *Capital Investors Co. v. Executors of Estate of Morrison,* 800 F.2d 424, 427 (4th Cir.1986); *Buffum v. Peter Barceloux Co.,* 289 U.S. 227, 237, 53 S.Ct. 539, 543, 77 L.Ed. 1140 (1933). As a result, an enforcing plaintiff has the right to receive the property or its proceeds from the constructive trustee, *Soderstrom v. Kungsholm Baking Co.,* 189 F.2d 1008, 1013 (7th Cir.1951); *White v. Roberts,* Mo.Ct.App., 637 S.W.2d 332 (1982), George Gleason Bogert, The Law of Trusts and Trustees § 866 (2d ed. 1982), as well as the right to receive a money judgment for property received against the constructive trustee. *Meadows v. Bierschwale,* Tex.Supr., 516 S.W.2d 125 (1974); *Baron Bros. Co. v. Stewart,* 182 F.Supp. 893 (S.D.N.Y.1960), Restatement of Restitution § 202 (1937). In fact, where it is necessary to make the successful plaintiff whole, courts have been quite willing to allow the plaintiff to recover a portion of the trust property or its proceeds along with a money judgment for the remainder. *Meadows v. Bierschwale,* Tex.Supr., 516 S.W.2d 125 (1974); *Church v. Bailey,* 90 Cal.App.2d 501, 203 P.2d 547 (1949); *Van Blarcom v. Van Blarcom,* 124 N.J.Eq. 19, 199 A. 383 (1938); George Gleason Bogert, The Law of Trusts and Trustees § 867, at 72–73 (2d ed. 1982).

Analogous support can be found in Delaware law. For example, it is settled that when equity obtains jurisdiction over some portion of a controversy, it will proceed to decide the whole controversy and give com-

plete and final relief. As this Court has stated:

> [T]his suit falls within a field of original equity jurisdiction.... This being the case, it is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief, even though that involves the grant of a purely law remedy such as a money judgment. Therefore, even though the judgment below be regarded as in part at least a judgment for money, which we think not, that lies within the power of the Vice Chancellor to order.

*Wilmont Homes, Inc. v. Weiler*, Del.Supr., 202 A.2d 576, 580 (1964) (citations omitted). *See also Wilmington Trust Co. v. Barry*, Del.Super., 397 A.2d 135 (1979); *New Castle County Volunteer Firemen's Assn. v. Belvedere Volunteer Fire Co.*, Del.Supr., 202 A.2d 800 (1964). Equitable relief, including damages, if appropriate, will be tailored to suit the situation as it exists. *Tenney v. Jacobs*, Del.Supr., 240 A.2d 138 (1968). "While a court of equity has no jurisdiction to entertain a suit brought purely for compensatory damages, those being awarded at law, it may nevertheless award compensatory damages as a part of the final relief in a cause over which it admittedly has jurisdiction." *Tull v. Turek*, Del.Supr., 147 A.2d 658 (1958); *accord, Anzilotti v. Andrews Construction Co.*, Del.Ch., 115 A.2d 493 (1955).

### C.

 In denying Hogg's motion for reconsideration, the Vice Chancellor stated that he had made no determination that Walker was liable for a breach of trust or that Walker had "violated his fiduciary duties as constructive trustee on behalf of the beneficiary, Monica Hogg." That is not a correct treatment of the law. As we noted in *Adams v. Jankouskas*, Del.Supr., 452 A.2d 148, 152 (1982), the imposition of a constructive trust implies a duty on the part of the constructive trustee. In this case, the duty of Walker was to transfer the proceeds of the trust corpus to Hogg. In failing to perform that duty, he breached his trust obligation.

 The fact that the *res* of the trust was dissipated does not foreclose an equitable remedy to make Hogg whole. The Court of Chancery has a number of equitable powers at its disposal. The court can order the constructive trustee to account for the trust property. *See* GEORGE GLEASON BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 963, at 40–44 (2d ed. 1982). For a failure to account as required by court order, the constructive trustee may be surcharged or be required to pay compensatory damages. *Id.* at 61. It is an established principle of law in Delaware that a surcharge is properly imposed to compensate the trust beneficiaries for monetary losses due to a trustee's lack of care in the performance of his or her fiduciary duties. *See Wilmington Trust Co. v. Coulter*, Del.Ch., 200 A.2d 441, 452 (1964). Another possible remedy includes a personal judgment against Walker.

The range of remedies is particularly important here. Although Walker sold the house in 1987, the constructive trust was not imposed until 1989. It is, of course, entirely possible that the proceeds were dissipated by the time of the trust's imposition. That, however, does not defeat the effect of the trust, which relates back to the date of the sale of the house. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355, 1363 (1984); *Pioneer Annuity Life Insurance Company v. National Equity Life Insurance Company*, Ct.App., 159 Ariz. 148, 765 P.2d 550, 556 (1989). Thus, the trial court has broad latitude to exercise its equitable powers to craft a remedy. Its failure to do so under all of the circumstances here was an error of law.

The judgment of the Court of Chancery is REVERSED.