NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3645
_____

In re:  GREEN FIELD ENERGY SERVICES, INC,
A/K/A Green Field Energy Services, LLC,
A/K/A Hub City Industries, LLC

------------------------------

ALAN HALPERIN, AS TRUSTEE OF THE GFES LIQUIDATION TRUST

v.

MICHAEL B. MORENO; MOR MGH HOLDINGS, LLC; MOODY, MORENO,
AND RUCKS; SHALE SUPPORT SERVICES, LLC; DYNAMIC INDUSTRIES, INC.;
DYNAMIC GROUP HOLDINGS, LLC; MORENO PROPERTIES, LLC; ELLE
INVESTMENTS, LLC; LQT INDUSTRIES, LLC, A/K/A Dynamic Energy Services
International, LLC; ENRIQUE FONTAVA; CHARLIE KILGORE; MARK KNIGHT

MICHAEL MORENO; MOR MGH HOLDINGS, LLC,
                                                      Appellants
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-18-cv-01881)
District Judge: Honorable Colm F. Connolly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2020

Before:  SHWARTZ, PHIPPS and FISHER, *Circuit Judges*.

(Filed: October 27, 2020)

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

This appeal arises out of an adversary proceeding in Bankruptcy Court. Following a bench trial, the Bankruptcy Court found appellant Michel B. Moreno personally liable for tortious interference with contract and recommended imposition of a constructive trust over his Dallas, Texas residence. On review, the District Court agreed. It entered final judgment on liability and imposed the constructive trust. Moreno and co-appellant MOR MGH Holdings, LLC challenge both rulings on multiple grounds. We will affirm.[1]

The District Court held that Moreno tortiously interfered by causing MOR MGH, a shell entity he controlled, to breach its contracts to buy stock in another of Moreno's companies, Green Field Energy Services, Inc. Under applicable New York law, "[t]he elements of a tortious interference with contract claim are well established—the existence of a valid contract, the tortfeasor's knowledge of the contract and intentional interference

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. §§ 157(c)(1), 1334(b). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's findings of fact for clear error and its conclusions of law de novo. *Copelin v. Spirco, Inc.*, 182 F.3d 174, 180 (3d Cir. 1999).

2

with it, the resulting breach and damages."[2] Normally, an officer of a corporation is not liable for tortious interference merely because he or she makes decisions that lead the corporation to a contractual breach.[3] Rather, liability attaches where the officer acts for "personal gain, as distinguished from gain for the corporation."[4] The District Court held that Moreno tortiously interfered because he knew that MOR MGH, lacking any assets of its own, would be unable to meet its obligations unless Moreno provided the money, which he declined to do. The Court concluded that personal gain drove this decision, because Moreno spent $10 million of a loan from Goldman Sachs—money that would have enabled MOR MGH to buy the necessary stock—to purchase his home in Dallas.

Moreno offers a variety of arguments for why the District Court erred. First, he says, the Court presumed that he was required to use his personal wealth to enable MOR MGH to meet its contractual obligations to Green Field. Contrary to this assertion, the District Court never presumed an independent legal obligation requiring Moreno to finance MOR MGH. Rather, it concluded that his decision to cease such financing qualified as tortious interference, because Moreno knew that MOR MGH could not otherwise perform.

---

[2] *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531, 533 (N.Y. App. Div. 1998). The Bankruptcy Court applied New York law based on a choice-of-law provision in the contracts. The District Court did the same, and the parties do not object.

[3] *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 337-38 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012).

[4] *Id.* at 338 (quoting *Petkanas v. Kooyman*, 759 N.Y.S.2d 1, 2 (N.Y. App. Div. 2003)).

Next, Moreno contends that he never "chose to cause MOR MGH" to breach its contracts. Appellants' Br. 21. The record demonstrates, however, that Moreno alone controlled whether MOR MGH made the necessary stock purchases, that he possessed the needed funds, and that he deliberately declined to provide them, preferring to prioritize a different business venture and his Dallas home purchase.

Third, Moreno asserts that the District Court erred because it found him liable notwithstanding its finding that the $10 million from Goldman Sachs was never "earmarked for Green Field." Appellants' Br. 18. Although he now claims he was not permitted to use those borrowed funds on Green Field stock, Moreno himself testified that "[t]he loan had the ability for me to invest in Green Field," and the record demonstrates the same. App. 1254. While Moreno is correct on earmarking, the law asks not whether the funds were earmarked, but whether he acted for "personal gain."[5] We agree with the District Court that Moreno acted for personal gain by (i) taking $10 million in non-earmarked but nonetheless available funds, (ii) depriving MOR MGH of the ability make its promised $10 million stock purchase, and (iii) using those available funds to buy a home.

Finally, Moreno argues that he was not responsible for Green Field's financial woes and that he channeled millions of dollars into Green Field prior to its bankruptcy. These assertions, even if true, are irrelevant. For purposes of tortious interference, Green

---

[5] *Id.*

4

Field suffered damages the moment Moreno caused MOR MGH to breach. The Bankruptcy Court so found, the District Court adopted that finding, and Moreno does not challenge it on appeal. Thus, Moreno fails to identify any error in the District Court's ruling.

Turning to the constructive trust, Moreno argues that the District Court erred by imposing this remedy without clear and convincing evidence. "When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed."[6] "To prevail on a claim for . . . imposition of a constructive trust[,] the Trustee must . . . show that ([i]) there was an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law."[7]

According to Moreno's own testimony, in 2013 he caused MOR MGH to contract with Green Field to purchase $10 million of preferred stock. The contract referenced "a borrowing from Goldman Sachs." App. 998. Moreno admitted that he used this money instead to purchase his Dallas home. Lastly, Moreno acknowledged that Green Field never received from MOR MGH what it was owed under the contract. This testimony, corroborated in the record, constitutes clear and convincing evidence of the five elements

---

[6] *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993). The Bankruptcy Court applied Delaware law, the District Court agreed, and the parties do not object on appeal.

[7] *In re Direct Response Media, Inc.*, 466 B.R. 626, 661 (Bankr. D. Del. 2012).

necessary to impose a constructive trust.[8] Although Moreno asserts that more evidence was required to "trac[e]" the Goldman loan directly to his home, he cites no legal authority establishing such a requirement. Appellants' Br. 26.

Next, Moreno cites a single, unpublished case to argue that the District Court's finding on earmarking precludes the imposition of a constructive trust. That case is distinguishable, however, because it did not involve allegations of fraud or unfairness, but a good faith dispute over an annuity owner's attempt to revise her beneficiary designation.[9] Here, by contrast, the record evidences a lack of good faith: Moreno used the borrowed $10 million to buy a home, simultaneously deprived MOR MGH of the $10 million it needed to perform its obligations, and then falsely certified that the $10 million stock purchase had in fact occurred. In our view, this constitutes unfair and unconscionable conduct.[10] As for the other elements required for a constructive trust, the absence of earmarking is hardly decisive. The Goldman loan permitted multiple uses, but Moreno's chosen use was unjustified and caused him to be enriched at Green Field's expense.

Moreno's final three arguments against the constructive trust have been waived. He filed a brief developing these arguments in Bankruptcy Court. But he later withdrew

---

[8] *See id.*

[9] *Pedrick v. Roten*, No. 11-1221-SRF, 2013 WL 351667, *1-*5 (D. Del. Jan. 29, 2013).

[10] *See Hogg*, 622 A.2d at 652.

6

that filing, which consequently was never transmitted to the District Court. Instead, what became Moreno's opening brief in District Court contained only fleeting references to one of these three arguments.[11] "To preserve a matter for appellate review, a party must unequivocally put its position before the [District C]ourt at a point and in a manner that permits the court to consider its merits."[12] Moreno failed to do this. Accordingly, the three arguments "raised in passing . . . , but not squarely argued" until Moreno's reply brief in District Court "are considered waived."[13]

For these reasons, we will affirm.

---

[11] Moreno purported to "incorporate by reference the arguments presented" in his earlier filing, App. 2773, but as the District Court correctly noted, that filing was subsequently withdrawn.

[12] *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (internal quotation marks and citation omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) ("A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal, so 'the crucial question regarding waiver is whether [appellants] presented the argument with sufficient specificity to alert the [D]istrict [C]ourt.'" (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 471 (3d Cir. 1992))).

[13] *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *see also Jaludi v. Citigroup*, 933 F.3d 246, 256-57 n.11 (3d Cir. 2019) ("Because Citigroup failed to invoke the provision until its reply brief in the District Court, we deem this argument waived.").