**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 14, 2025

Srinivas M. Raju, Esquire
Matthew D. Perri, Esquire
Kyle H. Lachmund, Esquire
Mari Boyle, Esquire
Richards, Layton & Finger LLP
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Megan Ward Cascio, Esquire
Rachel R. Tunney, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801

Lewis H. Lazarus, Esquire
Albert J. Carroll, Esquire
Barnaby Grzaslewicz, Esquire
Samuel E. Bashman, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

RE: *Enhabit, Inc. et al. v. Nautic Partners IX, L.P. et al.*,
C.A. No. 2022-0837-LWW

Dear Counsel:

I write regarding the parties' competing proposed orders to implement the constructive trust remedy imposed after trial. This letter is accompanied by an Order Granting Constructive Trust (the "Order") that resolves the disputed issues. For most of the issues, my reasoning is self-evident from the Order's text. Other issues require explanation, which follows.

## I.      BACKGROUND

On December 2, 2024, I issued a post-trial memorandum opinion (the "Opinion") that entered judgment for the plaintiffs on breach of fiduciary duty and aiding and abetting claims.[1]  I found that the defendants had either acted disloyally or willfully participated in disloyal acts.[2]  The wrongdoing included siphoning resources and corporate opportunities from the plaintiffs to build a competing enterprise.

Remedying the plaintiffs' injuries proved challenging because the competing enterprise is—as of now—unprofitable.[3]  Typical measures of money damages were either unavailable or inequitable.[4]  To prevent the defendants from reaping the rewards of disloyalty if the enterprise's circumstances change, I imposed a constructive trust from which the plaintiffs can receive an equitable payment

---

[1] Post-trial Mem. Op. (Dkt. 519) ("Mem. Op.").  Terms not defined in this letter have the meanings given in the Opinion.

[2] The defendants are Nautic Partners IX, L.P., Nautic Partners, LLC, Vistria Fund III, LP, The Vistria Group, LP (together, the "PE Defendants"), Christopher Corey, David Schuppan, Chris Walker, and TVG NP Homecare Topco, LP ("Topco").

[3] Mem. Op. 78.

[4] *See id.* at 78-82.

stream.[5] This remedy was designed to cause the defendants to disgorge future gains while dampening the potential for perverse incentives.

On February 18, 2025, I issued a letter opinion (the "Letter Opinion" and, with the Opinion, the "Opinions") to clarify and outline aspects of the constructive trust's structure.[6] I explained, among other things, that funds set for distribution to investors at the Topco level would be placed into the constructive trust so that a portion could be allocated to the plaintiffs.[7] I also invited the parties to submit a form of order to implement the constructive trust, or competing orders if they could not agree.

On March 6, the plaintiffs and defendants each filed a motion and proposed order to implement the constructive trust remedy.[8] A week later, they submitted an "issues list" identifying 29 disputed items in their proposed orders.[9]

---

[5] *Id.* at 36, 88.

[6] Letter Op. (Dkt. 531).

[7] *Id.* at 14-16.

[8] Mot. for Entry of Pls.' Proposed Constructive Trust Order (Dkt. 533) ("Pls.' Mot."); [Proposed] Order Regarding Constructive Trust (Dkt. 533) ("Pls.' Proposed Order"); Defs.' Mot. for Entry of Their [Proposed] Order Granting a Constructive Trust (Dkt. 534) ("Defs.' Mot."); [Proposed] Order Granting Constructive Trust (Dkt. 535) ("Defs.' Proposed Order").

[9] Dkt. 541.

## II.    ANALYSIS

The parties broke the disputed items into three categories: (1) property subject to the constructive trust and related definitions; (2) reporting and information rights; and (3) operation of the constructive trust.[10]  I have attempted to resolve all disputed issues through the Order filed contemporaneously with this decision.[11]   My reasoning on certain of the more substantive issues is explained below, organized by the parties' three categories.

### A.    Property Subject to Constructive Trust / Definitions

There are eight disputed issues in the first category.  Each issue is resolved by the Order.  Three are discussed below.

#### 1.    Restrictions on or Treatment of Defendant Dispositions

The plaintiffs wish to restrict defendants other than Topco from disposing of Topco equity (with a specific exception) unless the court first ensures the plaintiffs' interests are "not prejudiced or frustrated in any way."[12] The plaintiffs are concerned that, absent restriction, any sales of Topco equity by the PE Defendants would

---

[10] *Id.*

[11] Order Granting Constructive Trust (Dkt. 542) ("Constructive Trust Order").

[12] Pls.' Proposed Order ¶ 3; *see id.* ¶ 15; Pls.' Mot. ¶ 7.

effectively terminate the constructive trust.[13]  In that case, the plaintiffs say, they would receive 43% of the PE Defendants' proceeds but less than 23% of Topco's total proceeds and none of the proceeds distributed to other equity holders.[14]

I decline to restrict the defendants' abilities to sell equity.  The plaintiffs did not previously seek this relief, which would effectively amount to a permanent injunction.  Nothing in the Opinions provides for it.  Even so, there are several other reasons to reject it.

First, the plaintiffs' concerns should be allayed by the language of the Order addressing dissolution.[15]  The Order provides that the constructive trust dissolves when Topco has "disposed of all its material assets."[16]  It also states that if a defendant (other than Topco) were to dispose of its position in Topco, the constructive trust would dissolve *only* with respect to that defendant's interests.[17]

---

[13] Pls.' Mot. ¶ 5.

[14] *Id.*

[15] *See* Constructive Trust Order ¶ 13.

[16] *Id.*; *see also* Mem. Op. 88 (explaining that the constructive trust will cease to exist after the defendants exit).  Topco is a defendant and jointly and severally liable alongside the PE Defendants.  *See* Letter Op. 15.

[17] Constructive Trust Order ¶ 13 ("[T]he Constructive Trust dissolve[s] . . . only with respect to a Defendant other than Topco, on the date on which such Defendant has disposed of its entire interest in Topco and all Proceeds required to be paid under this Order have been paid to the Trustee . . . .").

The plaintiffs would be entitled to 43% of the defendant's earnings from that disposition.[18] The plaintiffs would also retain their interests in future distributions to the remaining Topco investors.[19]

Second, although the constructive trust might shrink if the PE Defendants dispose of their equity, the plaintiffs were not granted a fixed quantity of profits. My remedial goal was not a compensatory one; it was rescissory.[20] Thus, the defendants are not obligated to retain their equity for the plaintiffs' benefit.

Third, as the plaintiffs acknowledge, Topco's organizing documents already impose conditions that limit the PE Defendants' unilateral sale of their equity.[21] The

---

[18] *See* Letter Op. 16-17 ("[B]ecause Nautic, Vistria, and Walker are jointly and severally liable, any proceeds they receive upon an exit from their positions in VitalCaring would be placed into the constructive trust."); *id.* at 16 ("[T]he trust would include any proceeds flowing through Topco for distribution to investors.").

[19] The Opinions specify that the plaintiffs are entitled to 43% of the funds distributed from Topco to its equity holders. *See* Letter Op. 17; Mem Op. 105. The parties agree, however, that the plaintiffs' interest at the Topco level is subject to adjustment following a subsequent issuance of additional equity interests in Topco. *See* Defs.' Mot. ¶ 9; *see also* Constructive Trust Order ¶ 10.

[20] *See* Mem. Op. 77 ("The remedial goal is not a compensatory one."); *see also id.* at 88 ("The remedy of a constructive trust is less concerned with compensating a plaintiff than with removing the rewards of a defendant's disloyalty." (citing *Guth v. Loft*, 5 A.2d 503, 511 (Del. 1939))).

[21] Pls.' Mot. ¶ 8 (citing JX 2124 (TVG NP Homecare Topco, LP's Third Amended and Restated Limited Partnership Agreement) §§ 11 (Transfer of Interests), 12.1 (Tag-Along)); *see also* Pls.' Mot. Ex. D. (Ltr. from Defs.' Counsel to Pls.' Counsel) 2 n.3 (providing that the PE Defendants "cannot . . . transfer their interest without triggering other equity[ ]holder rights.").

Order adds further protection on affiliate transactions so that the defendants cannot "tunnel" proceeds out from under the constructive trust.[22] Greater constraints could clash with negotiated rights under Topco's organizing documents.

The constructive trust is designed to prevent the incentive misalignment that the plaintiffs fear.[23] Its vertical structure and allocation of proceeds permit the defendants to recoup their capital contributions, disincentivizing them from allowing VitalCaring to languish or making a hasty exit. That balance would be upset if the defendants' abilities to make investment and business decisions—including about a disposition of their interests—were impaired.

### 2. Definition of "Proceeds"

The Letter Opinion outlined the proceeds at the Topco level that are subject to the constructive trust.[24] The parties' proposed orders each define "Proceeds," but diverge on what that definition should include.[25] Paragraph 2(c) of the Order sets

---

[22] Pls.' Mot. ¶ 22; *see* Constructive Trust Order ¶ 19 (requiring the "written consent of the Trustee" to enter into an "Affiliate Transaction").

[23] *See* Mem. Op. 87-88 ("Nautic and Vistria will remain incentivized to support VitalCaring's growth to recover their investments. If they choose not to grow the business, they do so at their own peril.").

[24] *See* Letter Op. 16-17.

[25] *Compare* Pls.' Proposed Order ¶ 2(c), *with* Defs.' Proposed Order ¶ 2(c).

out a definition consistent with the Opinions and accounts for the issues discussed next.[26]

### a. Management Fees

The PE Defendants annually receive several hundred thousand dollars of management fees from VitalCaring.[27] The plaintiffs ask that these fees be included in the Proceeds placed into the constructive trust for allocation. They assert that "[m]anagement fees are simply a mechanism for the PE Defendants to extract value from VitalCaring," and ask me to infer that the fees do not reflect "a fair market exchange for services."[28] No evidence supporting that assertion was offered at trial.

I lack grounds to conclude that the management fees are anything but a payment for the PE Defendants' services. As such, I see no basis to grant the plaintiffs a share of those fees.[29] Management fees are therefore excluded from the definition of Proceeds in the Order.

---

[26] The definition of "Proceeds" includes returns on any sale of Topco equity by a defendant other than Topco because such sales are not restricted by the Order. *See supra* Section A.1; Constructive Trust Order ¶ 2(c); *see also* Pls.' Mot. ¶ 10 n.3. This approach is consistent with the Letter Opinion. *See* Letter Op. 16-17.

[27] *See* Pls.' Mot. ¶ 11.

[28] *Id.*

[29] Should the Trustee later have reason to believe otherwise, including because of future changes to the management fees, the Trustee may request a modification to the Order.

b.      Management Equity

Members of VitalCaring management with incentive equity are invested at the Topco level alongside the PE Defendants.[30]  The defendants contend that the definition of Proceeds should exempt distributions from Topco to these recipients of equity incentive compensation.[31]  The plaintiffs argue the opposite.[32]

The Letter Opinion explains that the funds going into the constructive trust include "any proceeds flowing through Topco for distribution to investors" and "any funds to be distributed to Topco's investors pro rata."[33]  There is no exclusion for payments to management with incentive equity.  The defendants disagree based on a footnote in the Opinion stating that "no separate damages are sought from Walker's [management equity incentive plan]."[34]  But the footnote merely observed that the constructive trust will put the equity interests of April Anthony and Luke James (non-parties who breached their duties of loyalty) on the same footing as Chris Walker (a defendant found liable for breaching his duty of loyalty and aiding and abetting Anthony's and James's breaches).  Including payments to *all* equity holders

---

[30] *See* Letter Op. 14; Mem. Op. 15, 90-91.

[31] *See* Defs.' Mot. ¶ 30; Defs.' Proposed Order ¶ 2(c).

[32] Pls.' Mot. ¶ 12; Pls.' Proposed Order ¶ 2(c).

[33] Letter Op. 16.

[34] Defs.' Mot. ¶ 30 (quoting Mem. Op. 75-76 n.426).

within the definition of Proceeds is consistent with the approach outlined in the Opinions.

### c.    Past Proceeds

The plaintiffs' proposal seeks to recoup Proceeds from as early as May 2021, when Topco was formed.[35]  In principle, "the duty to transfer the property relates back to the date of the wrongful act that created the constructive trust."[36]  But as the defendants point out (and the Opinions recognize), there are presently no benefits to disgorge.[37]

The only example of relevant, previously disbursed funds offered by the plaintiffs are management fees paid to the PE Defendants.[38]  As discussed above, such fees are not Proceeds.[39]  If, however, the Trustee who will oversee the constructive trust learns of previous fund transfers that should be deemed Proceeds, the Trustee may seek a modification of the Order to address them.

---

[35] Pls.' Mot. ¶ 14; Pls.' Proposed Order ¶ 4.

[36] *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993).

[37] Defs.' Mot. ¶ 27 (quoting Mem. Op. 83; Letter Op. 16).

[38] Pls.' Mot. ¶ 14.

[39] *See supra* notes 28-30 and accompanying text.

d.     Borrowing

The plaintiffs seek to limit the defendants' ability to incur debt secured by Topco equity.[40]  The defendants oppose this limitation and argue that disbursements from loans secured by Topco equity should not be considered Proceeds.[41]  I agree with the defendants.  These disbursements are neither revenue nor profits, and the Opinions do not implicate them.  If Topco were to distribute loan proceeds to equity holders, however, those funds would be considered Proceeds subject to the constructive trust.[42]

## B.     Reporting and Information Rights

The next category of issues includes the Trustee's authority, the Trustee's information rights, and the plaintiffs' information rights.

### 1.     Scope of the Trustee's Authority

The Trustee appointed to oversee the constructive trust will be authorized to "supervise and guide" the trust's continued execution.[43]  The plaintiffs ask that this authority include oversight of VitalCaring's business: the ability to determine

---

[40] Pls.' Mot  ¶ 7 n.1.

[41] Defs.' Mot. ¶ 29.

[42] *See id.*; Constructive Trust Order § 2(c).

[43] Mem. Op. 107.

whether various corporate acts are "not in the best interest of Topco or its subsidiaries or [p]laintiffs."[44] Those broad powers are unwarranted.

Typically, "[t]he only duty of the constructive trustee is to transfer the property to the equitable owner."[45] The Trustee here will have some greater oversight of the funds going into the trust, given the furtive behavior and wrongdoing that the defendants were found to have engaged in.[46] But those powers are limited to that necessary to "transfer the property to the equitable owner."[47] For example, the Trustee will receive prior written notice of dividends, distributions, or other material payments with respect to equity interests in Topco.[48] The Trustee is also granted a consent right on any affiliate transaction over $100,000.[49] These powers permit the Trustee to oversee the constructive trust—not VitalCaring's business.

### 2. The Trustee's Information Rights

The Order contemplates that the Trustee will receive information needed to confirm that the proper sums are contributed to and distributed from the constructive

---

[44] Pls.' Proposed Order ¶ 22; *see* Pls.' Mot. ¶¶ 20-21.

[45] *Hogg*, 622 A.2d at 652.

[46] *See, e.g.*, Mem. Op. 1-2, 55, 73-74.

[47] *Hogg*, 622 A.2d at 652.

[48] Constructive Trust Order ¶ 18.

[49] *See id.* ¶ 19. This consent right was included in the defendants' proposed order. Defs.' Proposed Order ¶ 16.

trust.[50]    The Trustee can request information "to assess the total allocation Encompass is entitled to in a given period," receive "quarterly financial updates on VitalCaring," "request a modification to the trust based on information received," and "provide regular updates to the Court."[51]  The Trustee will have "the power to request information from VitalCaring, its principals, and the PE Defendants."[52] These information rights, along with the Trustee's authority to review dilutive and third-party transactions, are appropriately protective of the plaintiffs' interests.[53]

Should the Trustee conclude that additional information is needed to fulfill his or her charge, the Trustee may request a modification of the Order.

---

[50] Defs.' Proposed Order ¶¶ 13-15.

[51] Mem. Op. 107.

[52] *Id*.  The Trustee does not, however, have the right to attend VitalCaring board meetings or "access to inspect," "without limitation," VitalCaring's books and records about its "operations," "business affairs," and "financial condition."  *See* Pls.' Proposed Order ¶ 21.

[53] *Cf. PharmAthene, Inc. v. SIGA Techs., Inc*., 2012 WL 2308180, at *2 (Del. Ch. May 31, 2012) (ORDER) (limiting the plaintiff's financial audit rights "to the extent necessary to verify the [transactions]," only in specific locations, and within a specific duration), *rev'd in part on other grounds*, 67 A.3d 330 (Del. 2013); *see also* Letter Op. 11 n.34 (discussing the court's reliance on *PharmAthene*).

### 3. The Plaintiffs' Information Rights

The constructive trust remedy is intended to prevent unjust enrichment by disgorging to the plaintiffs an equitable portion of the defendants' gains.[54] Again, it is neither punitive nor compensatory.[55]

Yet the plaintiffs request oversight and information rights. They seek: (1) financial, operational, and other information from VitalCaring; (2) advance notice of debts, dividends, compensation, asset acquisitions and dispositions, business combinations, and other corporate actions; and (3) unlimited reimbursement of expenses the plaintiffs incur to enforce these rights.[56] I decline to grant them.[57]

As discussed above, the Trustee has information and other rights to facilitate its oversight of the constructive trust. The parties will receive periodic updates from

---

[54] Mem. Op. 84-95 ("The point of the trust is not 'to effectuate the presumed intent of the parties, but to redress a wrong' where one party is unfairly enriched at the expense of another to whom a duty is owed." (quoting *Hogg*, 622 A.2d at 652)); *see also PharmAthene Inc. v. Siga Techs., Inc.*, 2011 WL 4390726, at *34 (Del. Ch. Sept. 22, 2011) ("As a remedial measure, the constructive trust . . . seek[s] to prevent unjust enrichment in the absence of an express agreement." (citation omitted)), *rev'd in part on other grounds*, 67 A.3d 330.

[55] *See* Mem. Op. 78 ("This approach is neither a complete cure for the defendants' blatant misconduct nor punitive.").

[56] Pls.' Proposed Order ¶¶ 20, 22-23, 45.

[57] The parties agree that the plaintiffs will receive notice of and limited information relating to the Proceeds due to the constructive trust and Dilutive Issuances. *See* Defs.' Proposed Order ¶¶ 3, 6; Pls.' Proposed Order ¶¶ 6, 10; *see also* Constructive Trust Order ¶¶ 4, 9.

the Trustee.[58]  Unless circumstances arise that warrant a modification to the Order, the plaintiffs are not owed additional information rights.

### C.      Operation of the Constructive Trust

The final set of issues concern the constructive trust's operation.  Most of the disputed issues in this category are resolved by the Order.  Three issues are discussed below due to their relative complexity.

#### 1.      Fees and Expenses

The plaintiffs believe that defendants (other than Topco) must bear the cost of administering the constructive trust.[59]  They ask that these defendants be obligated to indemnify the Trustee and pay the plaintiffs' own fees and expenses in connection with the Order.[60]  Neither set of fees can be shifted onto the defendants.

The Trustee's fees, expenses, and compensation will be paid by Topco—a defendant.  These amounts are considered a Topco-level expense for purposes of allocating the Proceeds in the constructive trust.

---

[58] Constructive Trust Order ¶ 16.  The Trustee must ensure that any highly confidential information is scrubbed from those updates, given that one of the plaintiffs is a VitalCaring competitor.  Any information provided to the plaintiffs will remain subject to the confidentiality order in this action.  *See* Dkt. 23.

[59] Pls.' Mot. ¶ 23.

[60] Pls.' Proposed Order ¶¶ 44-45.

Consistent with the American Rule, and other than as addressed in the Opinion, the parties must bear their own fees and expenses. To that end, the PE Defendants' own expenses "related to Topco" cannot be excluded from the Proceeds.[61]

### 2. Security

The plaintiffs also request a limited, first-priority security interest over (1) all Topco assets, including equity interests in direct subsidiaries, (2) the defendants' Topco equity interests, and (3) the proceeds allocated to the plaintiffs from the constructive trust.[62] They assert that this interest would "prevent[] bona fide purchasers or lenders from taking free of [the plaintiffs]' interest."[63] They also seek the right to unilaterally compel the defendants to enter into security agreements that the plaintiffs "deem necessary."[64]

A judicially imposed security interest is inappropriate for several reasons.

First, the Opinion did not grant an equitable lien. The plaintiffs sought that relief—a "security interest in the ultimate proceeds derived from the ill-gotten

---

[61] *See* Defs.' Proposed Order ¶ 2(c).

[62] Pls.' Mot. ¶ 25; *see* Pls.' Proposed Order ¶¶ 39-41; *see also* Defs.' Mot. ¶ 18.

[63] Pls.' Mot. ¶ 25.

[64] Pls.' Proposed Order ¶ 40.

gains"—as an alternative to a constructive trust.[65] I imposed a constructive trust instead of an equitable lien.[66] They are different remedies.[67]

Second, the beneficiary of a constructive trust is the equitable owner of specific property otherwise held by another party.[68] The beneficiary's right to payment is derived from equity—not contract.[69] General principles of restitution protect these equitable property interests.[70] This is supported by federal courts'

---

[65] *See* Pls.' Post-trial Opening Br. (Dkt. 479) 104-05; Pls.' Post-trial Reply Br. (Dkt. 491) 47, 52-53; *see also* Tr. of Post-trial Oral Arg. (Dkt. 498) ("Post-trial Hr'g Tr.") 69-70.

[66] The plaintiffs agreed that an equitable lien was not without complications. *See* Post-trial Hr'g Tr. 69-70 ("The trouble with the equitable lien solution is that it creates a very big incentive problem . . . . It also might be objected that it requires payment of the capital contribution to the plaintiffs and that's not an unfair concern."); *see also id.* at 143-44.

[67] A "constructive trust gives the claimant ownership of an asset . . . [b]y contrast, [an] equitable lien secures payment of a liability that is fixed in amount: namely, the defendant's unjust enrichment at the expense of the claimant." Restatement (Third) of Restitution and Unjust Enrichment § 56 (Am. L. Inst. 2011); *see also Pharmathene*, 2011 WL 4390726, at *34 ("Another equitable remedy, similar in purpose and operation to a constructive trust, is an equitable lien.").

In *Pharmathene*, the court recognized that aspects of a constructive trust and an equitable lien were appropriate relief in that case—the former over "the specific property" and the latter over "proceeds from that property." *Pharmathene*, 2011 WL 4390726, at *34. The "equitable payment stream" ordered by the court "share[d] at least some of the characteristics of a constructive trust or equitable lien." *Id.* at *38. That was not the remedy requested or awarded here.

[68] *See supra* notes 46-48 and accompanying text.

[69] *Id.*

[70] *See* Restatement (First) of Restitution § 160 cmt. f (1937) ("The equitable interest of the beneficiary in the property will be protected if the rights of bona fide purchasers do not

treatment of constructive trusts in bankruptcy, where the beneficiary's equitable interest is excluded from the property of the estate.[71]  I decline to judicially impose a security interest, which is generally a product of a negotiated agreement between the parties.[72]

Third, the plaintiffs are not entitled to a security interest over property to which they have no claim.[73]  The assets subject to the constructive trust are the identifiable proceeds distributed to Topco.  The plaintiffs otherwise have no claim to the defendants' property.[74]

---

intervene.  The creditors of the constructive trustee are not bona fide purchasers . . . ."); *see also id.* ("The beneficial interest of the beneficiary of the constructive trust is protected in equity when such protection is needed.").

[71] *See In re SHC, Inc.*, 329 B.R. 438, 449 (Bankr. D. Del. 2005) ("Since the constructive trust arises when the wrong occurs . . . it is superior to the Debtors' rights because it is first in time."); *see also In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust . . . ."); *cf. Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").

[72] *See, e.g.*, *Haft v. Haft*, 671 A.2d 413, 417 (Del. Ch. 1995) ("A security interest is a property right in identified property created by contract . . . .").

[73] *See* Pls.' Proposed Order ¶ 39 (requesting "a perfected first-priority security interest in (a) all assets of Topco (including equity interests in its direct subsidiaries), (b) Defendants' equity interests in Topco and (c) the Specified Percentage of any Proceeds received by Topco or any of the other Defendants . . . .")

[74] The United States Supreme Court has explained that when "property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's]

Finally, the plaintiffs cannot unilaterally compel the defendants to enter into security agreements. Doing so could impair VitalCaring's ability to borrow money, undermining the purpose of a vertical trust structure. To be clear, the Order does not limit the parties' ability to reach bilaterally negotiated security agreements.

### 3. Fiduciary Duties

The plaintiffs assert that the defendants should be deemed to owe fiduciary duties to the plaintiffs as "constructive trustees."[75] A constructive trust is not an "actual trust," however.[76] As *Pomeroy's Equity Jurisprudence* explains, a constructive trust is only a trust "by way of metaphor."[77] The constructive trust's sole purpose is to transfer property, and the trustee's role is to effect that transfer.[78]

---

claim is only that of a general creditor." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) (citing Restatement of Restitution § 215, cmt. a ). In such cases, it noted, "the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon *other* property of the [defendant]." *Id.* (emphasis added).

[75] Pls.' Mot. ¶¶ 26-27; *see* Pls.' Proposed Order ¶ 47.

[76] 4 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 1044 (5th ed. 1941).

[77] *Id.* ("[C]are should be taken to distinguish between actual trusts and those relations which are only trusts by way of metaphor; between persons who are true trustees holding the legal title for a beneficial owner, and those who simply occupy a position which is analogous in some respects to that of a trustee.").

[78] *See Hogg*, 622 A.2d at 652; *id.* at 654 (noting that the Court of Chancery's description of the failure of the constructive trustee to fulfill his duty as a breach of fiduciary duty was "not a correct treatment of the law."). The plaintiffs assert that *Hogg* is distinguishable because, there, the court ordered an immediate transfer of property. *See* Pls.' Mot. ¶ 26.

These principles provide no support for the idea that parties subject to a constructive trust remedy—here, the defendants—owe common law fiduciary duties to the trust's beneficiaries. Nor does Delaware law.[79] I therefore decline to mandate that VitalCaring be operated to advance the plaintiffs' interests over those of VitalCaring's equity holders.

### 4. Transferability of Plaintiffs' Interests

Finally, the plaintiffs argue that they should be free to transfer their interests in the constructive trust.[80] They assert that "[p]roperty rights are freely transferable by default under Delaware law."[81] Beyond that, they seek the right to unilaterally compel the defendants to execute agreements to effect any transfer.[82]

---

Here, by contrast, any transfer will be ongoing. But nothing in *Hogg* suggests that the absence of property for immediate transfer creates fiduciary duties when the existence of property to transfer does not.

[79] The only case cited by the plaintiffs is inapposite. *See Williams v. Spanagel*, 2000 WL 1336728 (Del. Ch. Sept. 14, 2000). There, fiduciary duties arose from a defendant's relationship to the plaintiff as her attorney-in-fact. *Id.* at 4. ("The common law fiduciary relationship created by a durable power of attorney is regarded as similar to the relationship created by a trust. Therefore, the fiduciary principles of trust law govern that relationship."). The court imposed a constructive trust due to the existing fiduciary relationship—not the other way around, as the plaintiffs here argue. *Id.* The court did not hold that the fiduciary duties arose out of the formation of a constructive trust.

[80] Pls.' Mot. ¶ 28; Pls.' Proposed Order ¶ 48.

[81] Pls.' Mot. ¶ 28 (citing *Hawkins v. Daniel*, 273 A.3d 792, 823 (Del. Ch. 2022), *aff'd*, 289 A.3d 631 (Del. 2023)).

[82] Pls.' Proposed Order ¶ 48.

The plaintiffs cite *Hawkins v. Daniel* in support of this relief.[83] There, the court observed that "by default . . . contract rights and other property rights are freely alienable" as a matter of public policy.[84] But the plaintiffs here lack a contract or property right. They have an equitable right to a portion of future proceeds. That remedy is non-transferrable.

## III. CONCLUSION

The parties' motions are each granted in part and denied in part, as outlined above and reflected in the Order.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[83] Pls.' Mot. ¶ 28.

[84] *Hawkins*, 273 A.3d at 823; *see also id.* at 823 n.32.